## 33.  CRANKSHAW *v.* SCHWEIZER MANUFACTURING COMPANY.

1. The verdict was warranted by the evidence. Where the error assigned is that the verdict was without evidence to support it, and there is any evidence to support it, the verdict should not be interfered with, unless there is further complaint that (*a*) some ruling of the court improperly withheld evidence from the jury, or (*b*) illegally permitted the jury to consider evidence which should not have been submitted to them, or (*c*) that the court's instructions, when applied to the evidence, were erroneous, inapplicable, or misleading.

2. In this case the proper issue was submitted to the jury, there was conflict in the evidence, and the verdict as to the issues of fact was fully authorized.

3. In order to entitle the defendant, in an action arising ex contractu, to the opening and conclusion of the argument, the defendant must, before the introduction of any evidence, admit facts authorizing a verdict in favor of the plaintiff for the amount claimed in the petition, without imposing upon the plaintiff necessity for proof of any kind. The admissions of the defendant in this case did not concede a prima facie case.

4. Compliance with the warranties in this case was essential to a recovery, and to allege a breach of this material part of the plaintiff's contract destroys the admission of plaintiff's prima facie case.

5. There was no error in admitting the testimony of which complaint is made in the second ground. The witness had the right to express an

opinion, after having stated the facts from which he deduced it; and also to give his opinion as an expert, as appears from the evidence.

6. The court did not err in refusing to allow the questions set forth in the third and fourth grounds. The questions asked referred to the operation of jewelry cases in Field's store, and had no relation to the similarity in appearance between the jewelry cases involved and the Field cases.

7. There was no error in rejecting testimony as to the alleged statements as set forth in grounds 5 and 6, nor in rejecting the letters referred to in the seventh ground.

8. The question and answer of which complaint is made in the eighth ground are objectionable for irrelevancy, but neither could have been harmful to the defendant.

9. There was no error in excluding the testimony quoted in the ninth ground, it not appearing from the evidence that that person whose declarations were sought to be proved was an agent of the defendant, authorized to speak, as to these things, in his behalf.

10. The court properly excluded the questions referred to in the tenth ground, the evidence not showing that the alleged declarant was an agent of the defendant, authorized to bind the defendant by his statements. And there was no error in rejecting the letter written by the defendant after the arrival of the jewelry cases. If the letter was admissible on the theory of notice, its exclusion did no harm in this case, because it was conceded that the defendant always claimed that there were certain defects in the cases he bought.

11. The charge of the court gave the defendant the benefit of every contention which he was legally entitled to have considered by the jury. It could perhaps have been more full and specific with relation to some matters therein presented; but the defendant can not complain that an abstract principle of law pertinent to the issue was not given in charge, when the court in the charge made clear the specific application of the principle by enumerating all defenses set up by him, and stated to the jury that they should find for the defendant on any of them which was proved to their satisfaction.

12. That the plaintiff knew the purpose for which the articles purchased by the defendant were to be used was immaterial in this case. "If an order be given to a manufacturer or dealer for a specific article of a known and recognized kind and description, and if the defined and described thing be actually supplied, there is no implied warranty that it will answer the purpose for which it is intended to be used. The only implied warranty or condition of the contract is that it will conform to the description and be of good workmanship and material."

Complaint, from city court of Atlanta—Judge Calhoun. May 22, 1906.

Argued January 11,—Decided January 24, 1907.

The suit was for a balance alleged to be due upon a contract for installing certain wall show-cases in the defendant's storehouse. The defense, as stated in the plea, was, "that it was made a stipu-

lation and warranty, attached to and growing out of said contract, that the said cases were to work perfectly smooth and without friction, that said cases were to be so made and installed as to support bric-a-brac, clocks, and heavy articles of sale of various natures, that the doors were to be arranged hung with bicycle chains, weights and pulleys, weights to slide in pockets in back of the case, work to be finished in best style and workmanship to match sample of store-finish work furnished by defendant, and the said cases to be installed without injury or damage to or disfigurement of defendant's cases; . . that the said wall cases were not installed in the manner stipulated in said contract; that said cases did not work smoothly and free from friction; that great injury and disfigurement were done to the defendant's cases in the installment of said cases; that some of the sashes of said cases warp from side to side and stick; that the side and top rails of said sashes were rubbed in many places; that the doors were not arranged to slide up, hung with bicycle chains, weights and pulleys, weights to slide in pockets in back of the cases, but on the contrary were hung with ordinary trunk-rollers, and in such manner as with great difficulty to be moved up and down; that the shelves were so heavy and brackets so light as to be incapable of supporting articles of any weight or breakable articles of any character with safety; that the sashes were warped and ill fitted to the cases; and various and other defects exist in said cases and in the installment thereof; . . that great expense and trouble has been occasioned by virtue of the necessity of calling, at inconvenient times, defendant's employees from their ordinary and regular pursuits to assist in moving the sashes in said cases up and down, great inconvenience caused customers in inspecting and examining articles exhibited in said cases, and great loss sustained in the inability of the defendant to display in said cases his heavy articles and many delicate articles of breakable character, because the cases were and are so illy constructed and installed as to be incapable of supporting articles of weight or articles easily broken," and that by reason of the failure of the plaintiff to comply with the contract, "and to carry out the stipulations thereof and the warranties connected therewith, defendant has been injured and damaged in the sum of $1,000, besides the sum of $720.41 alleged by [the plaintiff] to be due on said contract." Under the evidence and the charge, the jury found for the plaintiff

the amount sued for. The defendant excepted to the overruling of his motion for a new trial. For the grounds of the motion and the other material facts see the opinion.

*Payne, Jones & Jones,* for plaintiff in error.

*Rosser & Brandon,* contra.

RUSSELL, J. 1, 2. The plaintiff in error assigns the refusal of a new trial, upon his motion and amendments thereto, to be the error which should be corrected. The first three grounds of the motion are in the stereotyped form commonly called the general grounds, and sometimes known as a skeleton motion; but they call for a complete review and weighing of the evidence as it appears in the record, which in this case is by no means brief. We have taken the pains to travel deliberately more than once through the very voluminous record in this case and to examine its contents most critically. We have been enlightened on some of the principles of natural philosophy as applied to cabinet-making, and have become conversant with some phases of the jewelry business. This court, however, being restricted to the correction of errors of law and in equity, the only legitimate purpose of our journey through the evidence embodied in the record is the discovery of errors of law; and especially to determine, so far as the three original grounds of the motion are concerned, whether the refusal of a new trial is an error of law because the verdict is without evidence to support it. In considering the three general grounds alone, it may be stated, as a general rule, that if the evidence is sufficient to support the verdict, it should not be interfered with, unless (*a*) some ruling of the court improperly withheld from the consideration of the jury evidence which they should have had, and which might have contributed to a different result; or (*b*) unless the judge illegally permitted matters to be considered by the jury which were foreign to the true issues, and which he should not have allowed them to use in making their verdict; or (*c*) unless the court's instructions to the jury in the charge were erroneous, inapplicable, or misleading. We use the word "*matters*" in subhead (*b*), for the reason that it may include, in some cases, not only testimony of witnesses—matters of proof, but also various matters of fact, such as improper conduct of the court, counsel, parties, officers of court, spectators, or the jury themselves. This statement is not exhaustive, and of course has reference peculiarly to motions based on ordinary general

grounds. It has no application to motions dependent on refusals to grant continuances, on newly discovered testimony, or other extraordinary grounds, nor to a ground based on the denial of a right —such as is insisted on in this case—of opening and concluding. Considering the general grounds first, taken by themselves, it is our opinion that there was no error in refusing a new trial upon either contention of the skeleton motion, or upon all three of them taken as a whole. We therefore proceed to consider the several grounds presented in the amendment. These are thirteen in number.

3, 4. In the first the movant insists that he was wrongly deprived of the right to open and conclude the case in the argument before the jury. He· was the defendant, and the justness of his claim to the opening and conclusion is to be. determined by the extent of his admissions. Did he admit a prima facie case? It can not be doubted that this question is to be answered by a comparison in this case of the allegations in the petition with the answer thereto. We think the placing of petition and plea in parallel columns demonstrates that a prima facie case was not admitted.

| PETITION. | PLEAS. |
|---|---|
| The plaintiff entered into a contract with the defendant to furnish him four wall cases for the sum of $2800. The cases were delivered and installed in the store of the defendant on April 21, 1903. The plaintiff has fully complied with its contract; the defendant has paid $2079.59, leaving due $720.41, besides interest, payment of which has been refused on demand. | The cases referred to were delivered and installed in the defendant's store; but the petition does not set up the contract between the parties; the real contract is set up in paragraph five of the answer. The cases were not duly set up. The plaintiff did not fully comply with its contract and the defendant is not indebted in any sum. Demand for payment was made, and rightly refused. |

And the remainder of the plea mentions many other items in respect to which a contract was not complied with. We do not think that to say a contract has been made, but has failed in any material or essential particular can be construed as an admission that the contract was fully complied with. It is possible for cases

to arise, and for the petition to be so skillfully framed, that to admit the plaintiff's case would bring, as an inevitable result, a verdict for the plaintiff, and it is perhaps true in this case. Nevertheless the law requires such an admission of a prima facie case as would entitle plaintiff to recovery without proof of any material fact, before the defendant can gain the conclusion. *Abel* v. *Jarratt,* 100 *Ga.* 732; *Reid* v. *Sewell,* 111 *Ga.* 880; *Phœnix Ins. Co.* v. *Gray,* 113 *Ga.* 433. The original petition in this case seeking to recover upon a contract between the parties, before there could be a recovery for the full sum sued for, it must have been either admitted or proved (1) that the contract sued upon was in fact made; (2) and that the plaintiff had fully complied with that contract. The plea denies both these defenses; it disputes the contract sued on being the one made, and affirms that it was not complied with. The very essential allegations of the petition are negatived. It denies that the contract was ever complied with, and denies that there is any sum due. The admission that *a* contract was made does not meet the requirements when it is insisted that it was only partly complied with. The main body of the contract can not be admitted for the purpose of making a prima facie case, and at the same time the plaintiff's case be destroyed by showing a breach of warranties inevitably forming a part of the contract. Every stipulation and warranty is as much a part of the contract as the consideration is, and just as inseparable as the names of the parties. "Often they are the heart and soul of the whole contract, without which neither party could have been induced to contract." We think it clear that defendant was not entitled to the opening and the conclusion. The opening and conclusion in a case on trial before a jury is a very important and substantial right, and its improper refusal is ground for new trial. And in this case, to have taken this right away from plaintiff and to have awarded this advantage to the defendant would, we think, have afforded the plaintiff just ground of complaint.

5. In the second ground of the amended motion the plaintiff in error insists that the court erred in admitting in evidence, over the objection of the defendant, and in refusing to exclude on motion of the defendant's counsel, the following testimony: "These bent plate-glass doors will never work as smoothly as a straight door," and the further testimony, "The friction is more in a bent door

than in a straight door.  There is no way under heaven to have it. otherwise;" and the further testimony, "In case it [the sash] is stuck [in moving it up and down]· a little, you simply adjust the door to a level, and down it comes.  That is the way those doors work, and work beautifully.  They could not be made to work better."  At the time of the introduction and admission in evidence of said testimony, the defendant moved to exclude it, on the ground that it consisted in the mere conclusion of the witness and was in effect an abrogation of the functions of the jury.  The court overruled said objection.

The only objection offered at the time to the introduction of this testimony was that the statements were mere conclusions of the witness.  This objection was made to the testimony as a whole; the court did not err in declining to rule all of it out.  Part of such testimony is clearly a statement of facts.  But even if it were all a conclusion of the witness, we do not think the court erred in overruling the objection, because the witness giving the testimony was, as appears from the evidence, an expert of skill and long experience in the construction of such jewelry cases, and therefore entitled to give his opinion for whatever the jury might think it worth.  Civil Code, § 2587.  And further, it appears that the witness, Johnson, had supervised the construction of these cases and before expressing these opinions had already given all the necessary facts upon which he based his opinion, and upon the statement of facts, even if he was not an expert, he was entitled to express an opinion, the weight of which was to be determined by the jury upon consideration of the facts previously stated.  Civil Code, § 5285.  Even if the statement, "They could not be made to work better," be objectionable as being an opinion even beyond the limits of expert knowledge, a casual examination of the very voluminous evidence in this case leads us to the conclusion that the introduction of this evidence could not have influenced the verdict.  We think, however, there can be no doubt that the court admitted the evidence on the proof of the witness's expert knowledge, and it is our opinion that there was no error in so holding.

6. The third and fourth grounds of the amended motion for a new trial complained that the court below erred in refusing to permit defendant's counsel to ask the witness Johnson questions with respect to the resemblance or lack of resemblance between cer-

tain jewelry cases in Marshall Field & Company's store and those placed in the defendant's store in Atlanta. The court had admitted in evidence, as part of the contract, a letter of the defendant, in which it is specifically stated that the cases to be installed in defendant's store were "to *look* exactly like those we saw in Marshall Field's, with columns and all." It was therefore competent to prove that the cases were to *look* like Field's, with columns and all. The questions to which answers were sought were as follows: (1) "Are there any appearances of friction or biting of the sides or ends when the sash comes down in those cases?" (2) "When the doors were pushed open in those cases, did the doors stop while being pushed up and down?" It is perfectly clear that the second question would have elicited an answer, not as to the appearance of the cases, but as to their operation, or how they worked, and, for reasons hereafter to be stated, we think the action of the cases in use is immaterial if they were made and set up according to the specifications of the contract, of good material, and constructed in a workmanlike manner. And while the word "appearances" is used in the first question above, it is manifest, by the words that follow—"friction or biting of the sides or ends *when the sash comes down*," that the word "appearance" only relates to such *effects* as were caused by the working or operation, and does not refer to their looks or resemblance as originally constructed. Furthermore it does not appear in the evidence that the desire expressed by the defendant that his cases should look like Marshall Field's was agreed to by the plaintiff, and unless this had been expressly done, the purpose of defendant that they should look like Field's cases must yield to the plans and specifications signed and agreed upon by both parties, even though under the plans and specifications agreed upon there should result a dissimilarity of appearance. Even granting that by the plaintiff's silence it acquiesced in the stipulation that the cases look like Field's, and that this similarity became an additional obligation of the contract and that defendant was entitled to similarity in appearance, the two cases might look exactly alike and yet the doors in one might work smoothly and the doors in the other might not do so. In other words, to show by their appearance or otherwise that the doors did not work smoothly and accurately would not result in showing dissimilarity in appearance.

7. In the fifth and sixth grounds of his amended motion the defendant insists that the court erred in refusing to allow him to ask the plaintiff's agent the following question: "Did Mr. Swanson tell you that he had any difficulty in installing said cases?" and further: "Did Mr. Swanson make any statement in your presence that if he knew it was a job like that, he would not have come here [to Atlanta]?" These questions were asked with the purpose, no doubt, of eliciting information with respect to the unworkmanlike construction of the cases, and evidence upon that subject was material and proper; and the statements of an agent while actually engaged in the business of his principal within the scope of his agency are generally admissible, but it must first appear from the evidence that the agent is speaking within the scope of his authority, and authorized to bind the principal by his sayings, before the principal can be held bound thereby; and, so far as the evidence discloses, the cases were in a state of complete manufacture before they were sent to Atlanta. The witness Swanson occupied no official position with the plaintiff company and his sole duty was to set the cases up in the defendant's store; and the evidence further shows, that the witness Johnson (the agent of the company) was not in Atlanta but in Chicago during the whole of the installation. But even if that were not true, Swanson was not an officer of the corporation, but simply its laborer, and his conversation with an officer of the defendant company after the termination of the contract would not be heard as against the plaintiff's interest. And if the statements of Swanson are a part of the res gestæ, the statements in connection with his work, even when a part of the res gestæ, can not be heard against his employer, in the absence of any evidence showing that he was so authorized to speak, and acting in such capacity as to bind the employer by his utterances. Nor was there error in excluding from the evidence the letters which defendant sought to introduce. A critical examination of each and all of them demonstrates that the letters which the judge refused to admit in evidence were mere negotiations and counter-propositions. All of the prior negotiations were merged in the proposals and specifications of the plaintiff when accepted by the defendant; and we presume that the trial judge admitted the letter from plaintiff and one from defendant, which went to the jury, mainly for the purpose of showing the transmission and

the acceptance of the contract or proposal which was submitted in writing. The letter of the plaintiff says: "We enclose specifications, and will send measurements of the inside of the drawers, etc., as soon as possible. Specification is in duplicate; and if you will sign the original and return to us, this will constitute a contract." In reply defendant wrote "I received this morning specifications and contract, and return herewith signed copy." With the specifications signed the contract would have been complete without more; but plaintiff in his letter asked whether the shape of the glass shelves was to follow the curve of the case or be straight on front edge, and also asked which color to follow (it appearing that a mahogany sample sent by defendant had a different color on each side). The defendant in replying said nothing about the mahogany, but selected "the shelves curved to go with swelled sash." It is evident, therefore, that there was but one point outside of the specifications which was thereafter agreed to by the parties, to wit, the curved shelves, although the defendant *asks the plaintiff* to "make these cases to look exactly like those we saw in Marshall Field's," etc. The plaintiff gave the defendant an option in the selection of the shape of the shelves, and was bound to act upon defendant's expressed choice in that respect as to them; but the evidence nowhere discloses that plaintiff ever agreed to make the cases look exactly like those he saw in Marshall Field's, unless consent may be construed from silence. If silence gives consent, the plaintiff added to the original contract the additional stipulations contained in defendant's letter enclosing the signed contract. In any event it is perfectly clear that all of the letters excluded by the trial court merely presented proposals, none of which were agreed to by both parties; that there was no meeting of the minds—nothing binding upon either party—no definite understanding—no contract.

8. We fail to see the relevancy of the following question which the court permitted to be asked of the defendant: "Did not you know there were certain physical laws involved by which one glass could not be made to work as easily as two?" We are aware that great latitude is allowable in cross-examination, but it seems to us that the true question is not what the defendant knew of physical laws, nor what was the purpose to which he intended to apply that knowledge, nor what was the purpose to which he intended to put

the cases which he proposed to purchase; but the real question was, did he get what he ordered and what plaintiff contracted to supply? For this reason we think the objection of defendant's counsel was erroneously overruled. But in our view of the case the error is too harmless to work a new trial.

9, 10. The defendant complains in the ninth ground that the court erred in excluding the following question and answer: "Did Mr. Miller make any statement in your presence, or in Mr. Johnson's presence, in regard to said cases?" Answer: "Yes, he would not undertake to fix those cases for less than five hundred dollars." Counsel for defendant insists that as the statement of Miller was made in the presence of plaintiff's agent, U. G. Johnson, showing certain defects in the case and in regard to the expense necessary to remedy its defects, the statement constituted an admission on the part of the agent as to the truth of the same, in that plaintiff's agent stood by and did not deny the statement, though it called for an admission or denial; and that he therefore had thereby acquiesced in the same. And further, that Miller, who made the statement in examining and overlooking said cases, was acting for and in behalf of the plaintiff, and as such his statements were such admissions as were entitled to go to the jury. There are many circumstances under which the silence of an individual will count against him, but only where the statement made fairly and reasonably called for an answer. It is questionable whether Johnson's silence would have counted against him if he had been the plaintiff instead of plaintiff's agent, and Miller had said to him that he would not fix the cases for $500. The headnotes sufficiently cover the further exceptions taken to the exclusion and admission of evidence. These assignments are without substantial merit, if the trial judge entertained a correct view of the law applicable to the really controlling questions in the case.

11, 12. We come, therefore, to determine what is, to our minds, the most difficult question in the case: whether the doctrine of implied warranty is involved and should have been given in charge to the jury. The twelfth ground of the amended motion is as follows: "Because the court erred in failing, as movant contends, entirely to charge and put before the jury the main defense relied upon by the defendant, and to sustain which abundant evidence had been introduced, to wit: that the plaintiff company, in undertaking

to make for, deliver, and install in the defendant's store the said four cases, impliedly warranted that the same would be reasonably suited for the purposes intended, that is to say, that the same would be jewelry cases, and as such would be reasonably adapted for the display of jewelry, bric-a-brac, silverware, and other articles of like nature, such as are displayed in jewelry stores; it not appearing, as movant contends, from the evidence or the pleadings that the said implied warranty had been from the nature of the transaction or expressly excepted. The evidence, as movant contends, showed that the said cases had been purchased as jewelry cases, and as such were intended for the display of jewelry, bric-a-brac, silverware, and other like articles in the defendant's jewelry store; and further, that the plaintiff company, through its agent and authorized representative, the said U. S. Johnson, was fully apprised of the purpose and use for which jewelry cases were to be adapted before the alleged contract for their construction and installation in the defendant's store had been completed and concluded. It was one of the main contentions of the defendant, as disclosed by his pleadings and the evidence introduced thereunder, that the said cases were not reasonably adapted and suited for the purposes intended, to wit, the display of jewelry in the defendant's jewelry store, and more especially in that the said cases did not work smoothly and free from friction; that great injury and disfigurement were done to defendant's cases in the installation of said cases; that the sashes of some of the cases warped from side to side and stuck; that the sides and top rails of said sashes were rubbed in many places; that the doors were not arranged to slide up and hang with bicycle chains, weights and pulleys, weights to slide in pockets in back of the cases, but on the contrary were hung with ordinary trunk-rollers and in such manner as with difficulty to be moved up and down; that the shelves were so heavy and brackets so light as to be incapable of supporting articles of any weight or breakable articles of any character with safety; that the sashes were warped and ill fitted to the cases; and that various and other defects existed in said cases and in the installment thereof. The court failed, as aforesaid, to charge said jury upon the law of implied warranty, covering one of the main issues upon which the defendant's case was predicated, and, as movant contends, the court erred in failing to so charge upon the grounds and for the

reasons as aforesaid. Nor was the failure of the court to charge the jury upon the law of implied warranty, governing this substantial issue, cured or remedied, as movant contends, by the general charge of the court to the effect that the cases must be constructed and installed in the defendant's store in a workmanlike and reasonably skillful manner, and that the defendant would be entitled to recover any damages for the failure to so construct and install them. Such a charge had the effect of confining the consideration of the jury to the determination of the sole issue whether the cases were constructed and installed in a reasonably skillful and workmanlike manner, and absolutely eliminated and removed from the scope of the jury's consideration the entire contention of the defendant, and the evidence produced to prove the same, that the cases must not only be constructed and installed in a reasonably skillful and workmanlike manner, but that they must be reasonably adapted to the purposes for which they were installed." And the thirteenth ground, relating to latent defects undisclosed, will be considered with the twelfth, for the reason that the warranty that the seller knows of no latent defects undisclosed is one of those which may be implied, if the case be such that any warranty can be implied. The plaintiff in error insists that the sashes in the cases frequently stuck and could not be moved without very great effort; that his evidence further shows that plaintiff's agent was aware of a means for working the sashes properly or of causing the same to work, and yet he failed to make known the same to the defendant or to take any steps whatever to remedy said defects. And plaintiff in error insists, in this ground of the motion, that "the failure of the court to charge or put before the jury this implied warranty of the plaintiff, that he knew of no latent defects undisclosed, removed from the consideration of the jury the contention and evidence of the defendant to the prejudice of his defense."

Not infrequently a mere shade of difference determines whether the issue calls for the application of the doctrine of implied warranty or excludes it. In many cases in our experience the line of demarcation was very dim, and we think there can be cases in which as to different portions of even the same transaction the law of express warranty will control, so far as there has been express warranty, without excluding the application of an implied warranty to other portions of the contract. We are aware that this

statement seems contradictory and is not in accord with the general view; for in *Johnson* v. *Latimer,* 71 *Ga.* 470, it was held that "it is only in the absence of an express warranty that resort can be had to implied warranty; and where there was an express warranty the court could refuse to charge on the subject of implied warranty." In that case the court not only refused to charge, "that, if the machine sold defendant by plaintiffs was not reasonably suited for the use intended, the plaintiffs could not recover unless there was a special contract as to size," but on the contrary charged, as to the wheat separater in question, "that the warranty which the law required the plaintiffs to make was that the article sold was a separater, that is to say, that it would separate the grain from the chaff, but he did not warrant that it was suitable for transportation over the roads in the country or that it was such a machine as could be pulled by defendant's team." This is an express holding that there can be no implied warranty if there is an .express warranty. We yield to it as binding authority, and no doubt it influenced the trial judge in his charge to the jury. The Civil Code, §3555, raises an implied warranty for the protection of those purchasers who have not preferred to try to protect themselves by an express covenant of warranty, or where, from the nature of the transaction, there can be no warranty in the absence of an expressed warranty. Section 3555 is a provision for the protection of purchasers, but not extended to *all* purchasers. "If there is no express covenant of warranty, the purchaser must exercise caution in detecting defects; the seller, however, in all cases (unless expressly or from the nature of the transaction excepted) warrants— (1) That he has a valid title and right to sell. (2) That the article sold is merchantable, and reasonably suited to the use intended. (3) That he knows of no latent defects undisclosed." It excepts the purchaser who prefers to safeguard himself by an express covenant of warranty, him who fails to use that degree of caution which would easily detect patent defects, and him whose transaction is such that by its very nature no warranty can be expected to arise or be implied. If the plaintiff in error properly belongs in either of these classes, he can derive no benefit from the law of implied warranty—it affords him no protection; and the refusal of the court to charge as set out in the 12th and 13th grounds of the motion was proper. An inspection of the charge of the court, as

transmitted in the record, shows, however, that the complaint can only be a qualified one. For while the judge did not expressly refer to §3555, he explicitly stated all of the defects insisted upon by the defendant in his plea, and thereafter three times instructed the jury, in substance, as follows: "If on the contrary, according to the defendant's plea, the contract was not complied with and the work was not done according to contract, then you give the defendant such damages as you think he is entitled to recover by reason of the failure of plaintiff to comply with its contract."

The only complaint that plaintiff in error can make is, that the court did not charge the jury that the company impliedly warranted that the manufactured cases would be suitable to the purposes for which he intended them. The judge did not so charge. In our opinion he was right in not charging as the plaintiff in error insists that he should, for the reason that by the very nature of the transaction there could be no implied warranty. From the nature of the contract there could be no implied warranty of suitableness of purpose. Crankshaw did not go to the manufacturing company and purchase jewelry cases relying on its judgment. If he had done so, an implied warranty would have arisen. On the contrary, he employed the manufacturing company to make cases according to plans and specifications of his own; and when these jewelry cases were made according to Crankshaw's plans and specifications, with good workmanship and proper materials, the company had complied with its contract, whether the cases did or did not meet the purposes of Crankshaw. If the company, by reason of its experience, had known that the specifications furnished by Crankshaw would not make a good jewelry case, it could not have altered his plans and made a different jewelry case. This would have been a violation of its contract, and Crankshaw could well have replied, to the suggestion of superior knowledge and consequent action in pursuance therewith, that this was none of its concern. If the cases were made according to contract and his own plans, Crankshaw got what he bargained for, and whether the cases thereafter did not suit his purposes was wholly immaterial. To hold a manufacturer responsible for defects which he may know will arise from peculiarities of proportion or construction, because he knows the use for which the manufactured article is intended, and yet is powerless to prevent the defects, because he can not alter the plan, would be

indeed a harsh rule. The distinction is aptly drawn by Professor Parsons (1 Pars. Con. 586-7) : "If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle has been carried very far. It must, however, be limited to cases where a special thing is ordered, although this be intended for a special purpose." In Leake on Contracts, 404, the rule is thus aptly stated: "If an order be given for the manufacture or supply of an article to satisfy a required purpose, and not any specific article, being the essential matter of the contract, the seller is then bound, as a condition of the contract, to supply an article reasonably fit for the purpose, and is considered as warranting that it is so. But if an order be given for a specific article of a recognized kind or description . . and the article is supplied, there is no warranty that it will answer the purpose described or supposed, although intended and expected to do so." If Crankshaw had applied to the manufacturer for manufactured jewelry cases and had depended upon the judgment of the manufacturing company to furnish him cases such as he needed, then the warranty of suitableness of purpose would have at once arisen. Inasmuch, however, as he did not rely upon the judgment of the manufacturing company to furnish him the jewelry cases, but ordered certain cases to be made by certain plans and specifications, then no such warranty arises, and Crankshaw would be bound to pay for the cases, whether they in fact suited his purpose or not. The questions whether such cases met the contract, and were properly made out of good material, were the only issues that could have arisen between Crankshaw and the manufacturing company. This case is somewhat similar to that of Goulds *v.* Brophy, 43 N. W. 834, where the defendant ordered a fifteen-inch auger to make a twenty-inch hole, and the plaintiff sent him the machine. In that case, the Supreme Court of Minnesota held, that "If an order be given to a manufacturing company or dealer for a specific article of a known and recognized kind and description, and if the defined and described thing be actually supplied, there is no implied warranty that it will answer the purpose for which it is intended to be used. The only implied warranty or condition of the contract is that it will conform to the description and be of good workmanship and material." The same rule was announced and applied

in Cosgrove v. Bennett, 32 Minn. 371. There the defendant ordered a specific article of a known description, which was manufactured by the plaintiff. "There was an implied warranty, or, more correctly speaking, condition of the contract, that it should conform to the description and be of good material and workmanship according to that description, but none that it would answer the purpose described or supposed." The manufacturer only warrants the workmanship and material. One of the issues in this case was, whether the workmanship and material were the best quality, and the charge of the court shows that that issue was clearly and fairly submitted to the jury. As authority for the principle herein ruled, see Seitz v. Brewer's Ref. Co., 141 U. S. 518; 2 Benj. Sales, §§987, 988; Addison on Contracts, *977; Milwaukee Boiler Co. v. Duncan, 58 N. W. 234, and cit.; Ollivant v. Bayley, 5 Q. B. 288; Dist. of Columbia v. Clephane, 110 U. S. 212; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108; How v. Sanborn, 21 N. Y. 552; Deming v. Foster, 42 N. H. 165. If these jewelry cases were made according to Crankshaw's design, of good workmanship and good material (and this does not seem to be questioned in the evidence), it would not matter whether there were defects latent or patent; for "according to the principle of decided cases and upon clear grounds of justice, the fundamental inquiry must be always whether under the circumstances of the particular case, the buyer had the right to rely and did rely upon the judgment of the seller and not upon his own." No matter how he reached his conclusion, the design of these jewelry cases was Mr. Crankshaw's. He furnished his own plans and specifications; and if, as the jury found, under the charge of the court, the workmanship was good and the material good, no one is responsible for defects in their operation or unsuitableness to his purpose except the defendant himself. We agree with the proposition that in the absence of an express warranty the implied warranty that the article is reasonably suited to the use intended will apply, unless clearly excepted; but we have no hesitation in holding that the trial judge was right in his view that the nature of this transaction excepted this contract of sale. The decision in Elgin Jewelry Co. v. Estes, 122 Ga. 807, cited by plaintiff in error, is not in point. The holding there was merely that there was no express warranty in that case, and that the so-called "warranties" or agreements to replace articles that were

unsatisfactory, and those not selling readily, with new articles of like kind, was no express warranty as to the character, quality, or title of the goods. And for like reasons it was held in *National Computing Scale Co.* v. *Eaves,* 116 *Ga.* 511, that there was "no express warranty in the contract." The case of *Malsby* v. *Young,* 104 *Ga.* 212, is also cited. This case is certainly not in point. The judgment of the lower court was reversed because the law of implied warranty was incorrectly charged, and the Supreme Court in the decision reaffirmed the opinion in *Johnson* v. *Latimer,* 71 *Ga.* 470. The case of *McNeal* v. *Smith,* 106 *Ga.* 215, was one where the parties to the contract expressly excepted implied warranties as to the health, life, and soundness of certain mules. And in the case of *Floyd* v. *Wood,* 110 *Ga.* 850, the judgment against the defendant was sustained because he bought, as we think the defendant in this case did, "entirely upon his own judgment." The guano cases, cited by the very able counsel in his exhaustive brief for the plaintiff in error, in our judgment afford no authority and are not applicable in this case; for the guano is necessarily manufactured according to the formula and process of the seller, while the jewelry cases were to be made, and it appears from the record that they *were* made, according to the specifications of the buyer. If the workmanship and material were good (as the jury found they were), the designer of the jewelry cases would be responsible for their probable operation, just as the maker of the guano for its probable results. The jury having settled the disputed issues of fact, and there being in our judgment no reversible error in either the rulings or the charge of the court, the judgment must be                                             *Affirmed.*