## FAY & EAGAN COMPANY *v.* DUDLEY & SONS.

1. When a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser that it is required for a particular purpose, yet if the known, described, and definite thing, which is of the kind and quality called for by the order, be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

2. When the written contract for the sale of an article provides that the retention of the article for a given time after the date of shipment shall constitute a trial and acceptance and be a conclusive admission of the truth of all warranties, the mere fact that within the time stipulated notice of dissatisfaction has been given to the seller, but notwithstanding the article has been retained, will not have the effect to relieve the buyer from the force of the terms of the written contract.

3. The alleged new agreement between the plaintiff and defendant in reference to the machine was entirely lacking in consideration, and could not be the basis of any liability on the part of the plaintiff.

Argued June 28,—Decided August 15, 1907.

Complaint. Before Judge Little. Muscogee superior court. November 30, 1906.

J. A. Fay & Eagan Company, a corporation, brought suit against Dudley & Sons, a partnership, upon an account. The bill of particulars was as follows:

"T. J. Dudley & Sons, To J. A. Fay & Eagan Co., Dr. June 28, 1901: Shop Number 58289. One No. 6 Latest Improved Tenoner, with double upper and lower tenoning heads and bits, upper and lower cope heads and bits, left off but with copy spindles, T X L pulleys 16" diameter, Net 800.00, F. O. B. Columbus.

"1901, Aug. 28th. By cash, $400.00; Bal. due Oct. 28th, 1901, $400.00."

An amendment to the petition alleged that the machine referred to in the bill of particulars was sold and delivered under the terms of a written contract, a copy of which is exhibited. The contract is as follows: "Columbus, Ga., March 16, 1901. J. A. Fay & Eagan Co., Wood Working Machinery, Cincinnati, Ohio.

"Subject to strikes, accidents, or other delays beyond your control, deliver F. O. B. Columbus, Ga., April 7th, 1901, one latest improved Double End Tenoner,—No. 6 Double Upper and Lower Tenoning head bits, upper and lower cope heads and bits left off, but with cope spindles. One second-hand Buck Blind Stile Mor-

tise and Borer, with bits to mortise and bore 5/16" mortise and hole, and to be suitable for small stationary slats, if necessary, as small as 7/8" x 3/32" mortise. One Fay No. 3 saw Mandrel, pulley between bearings and mandrel turned to 1" where saw goes. (No expansion device necessary.) One 2nd hand Fay Sash sticker with boring attachment (2nd hand list No. 920) with boring bit and set of knives, mandrel 1" to suit head you have,—you to send a wire to confirm this diameter. For which agree to pay nine hundred and seventy-eight dollars with exchange. The purchaser agrees to make settlement within thirty days after date of shipment, and to then evidence all payments due at a later date, by notes bearing date of shipment and interest. In case payment is divided to be made as follows: $490 cash on arrival. $488 in four months with 6 per cent. interest. Title to machine to remain with us till paid for,—you to sign agreement to this effect. It is agreed that title to the property mentioned above shall remain in the consignor until fully paid for in cash; and that this contract is not modified or added to by any agreement not expressly stated herein; and that a retention of the property forwarded, after thirty days from date of shipment, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and void all its contracts of warranty express or implied. It is further agreed that the purchaser shall keep the property fully insured for the benefit of the J. A. Fay & Eagan Company." Signed by the parties.

The defendants filed an answer in which they denied all liability. The answer also alleged that the defendants were in need of a machine of the character described in the contract, and the plaintiff sold the machine and warranted it to be the latest improved double-headed tenoner and suited for the purposes intended, such purpose being the manufacture of doors, sash, blinds, and furniture; and this was known to the plaintiff. Plaintiff guaranteed that the machine would do the work required, that it was properly constructed, and that it would last for many years. The price agreed on was $800; one half to be paid on arrival, and the balance in four months, with interest; the title to remain in the plaintiff until paid for. On June 28, 1901, the machine was shipped to the defendants, and, upon its arrival, $400 was paid to the plaintiff and the machine installed in the shops of the de-

fendants. In doing so they relied upon the warranty and representations of plaintiff that the machine was as represented. After a thorough trial and test it was discovered that it was not as represented, was not properly constructed, and would not do the work, nor was it suitable for the purposes intended. Plaintiff was at once notified of the defects, and defendants offered to return the same upon repayment of the amounts that had been paid. Relying upon the representations, the defendants installed the machine and intended to use it, and in consequence thereof have been compelled to pay out various sums of money for freight and other expenses, amounting, in the aggregate, to more than $500. Defendants have repeatedly offered to return the machine, and still offer to do so. It is alleged that the defendants have been damaged in the sum set forth in the pleadings; and it is prayed that this amount be recouped and judgment in their favor be rendered. In an amendment to the answer it is alleged that the machine was received about July 20, 1901, and as soon as it was placed in position it was discovered that the heads of the tenon machine were cracked, and notice in writing was given to the plaintiff to this effect; and after this defect was repaired, the machine was put in operation and it failed to do the work for which it was intended. Defendants made every effort to induce plaintiff to repair the machine, the defects of which were specifically pointed out, and repeatedly offered to return the machine upon the repayment of the money which had been advanced; and plaintiff promised that it would make the necessary changes. Finally, in December, 1902, plaintiff and defendants agreed that the defendants should return the machine to plaintiff, who would put it in perfect order, supply such new parts as were necessary, the plaintiff to pay the freight both ways, and that on the return of the machine the defendants were to set up and operate it, and after a test of thirty days, if the machine was all right, the defendants were to pay the plaintiff the balance of $400; otherwise the defendants would not accept the machine. In pursuance of this agreement, on or about January 10, 1903, the machine was shipped to plaintiff, who, after keeping it about three months, returned it to the defendants. The defendants installed it and attempted to operate it, when it was ascertained that it would not do the work for which it was intended. The defects in the machine are pointed out in the answer,

and it is alleged that the plaintiff was notified that the machine was not satisfactory and did not comply with the terms of the agreement, and that the defendants would neither accept it nor pay for it. The trial resulted in a verdict for the defendants. The plaintiff made a motion for a new trial, which being overruled, it excepted.

*Goetchius & Chappell,* for plaintiff.

*J. H. Martin* and *A. W. Cozart,* for defendants.

COBB, P. J. (After stating the facts.)

1. The contract was in writing. There is no claim that the contract, as it appears in the writing, was the result of any fraud, accident, or mistake. It was free from ambiguity. The parties must therefore stand or fall by the terms of that instrument. It was an agreement to sell a machine of a certain description and a certain character. In a contract for the sale of goods, words of description of the subject-matter of the sale are ordinarily to be regarded as simply a warranty that the goods delivered shall be of the character described in the contract. *Henderson Elevator Co.* v. *North Ga. Mill Co.,* 126 *Ga.* 279 (55 S. E. 50.) Hence there was a warranty, on the part of the sellers, that the machine delivered would be of the kind and character described in the contract. There was nothing in the contract warranting that the machine would do a particular work, or work of a given character. The mere silence of the contract on this question would not be sufficient to open the door to parol evidence. In Seitz *v.* Brewers' Refrigerating Mach. Co., 141 U. S. 510 (12 Sup. Ct. 46, 35 L. ed. 837), it was held that where a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser to be required for a particular purpose, yet if the known, described, and definite thing be actually supplied, there is no warranty that it will answer the particular purpose intended by the buyer. In that case the contract was an agreement to sell "a No. 2 size refrigerating machine, as constructed by the said party of the first part." The defendant attempted to set up, as a defense, that prior to the execution of the contract the agent of the plaintiff had represented that the machine would cool 150,000 cubic feet to 40 degrees Fahrenheit; and it was held that this could not be considered, for the reason that it violated the terms of the written contract, that the contract described the machine, that

there was nothing in the description in reference to the work it would do, and that that which was attempted to be proved as a representation of the plaintiff was itself a new description of the machine and in conflict with the terms of the instrument. In the present case the contract being for the sale and delivery of a machine manufactured by the plaintiff and described in the contract, if a machine of that character was delivered, the plaintiff complied with its part of the contract and the defendants would be compelled to perform their part. It was therefore error to admit in evidence the representations as to the work that would be done by the machine, made by the agent at the time that negotiations were pending and before the written contract was entered into.

2. The contract provided that the retention of the property, "after thirty days from date of shipment, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and void all contracts of warranty express or implied." There was no provision in the contract that notice from the defendants to the plaintiff that they were dissatisfied with the machine and that the machine did not comply with the terms of the contract should interfere with the distinct agreement above referred to, resulting from the mere retention of the machine. It may be that this was a very unreasonable stipulation, but the parties have made their own contract and they must abide by its terms. If the defendant retained the machine during the time referred to in the above stipulation in the contract, such retention amounted to an admission that the representations made by or for the plaintiff were true and avoided all warranties. Unreasonable stipulations of a similar character to the one now under consideration appear in numerous contracts; but it has been uniformly held that the parties must abide by the terms of their contract in the absence of fraud, accident, or mistake. See, in this connection, *International Harvester Co.* v. *Dillon,* 126 *Ga.* 672 (55 S. E. 1034); *McCormick Harvesting Machine Co.* v. *Allison,* 116 *Ga.* 445 (42 S. E. 778).

3. But it is said, that, even though the defendants would not be allowed to enter any of their defenses to the original contract, there has been a new agreement, and that the plaintiff has not complied with the terms of the new agreement, and that the damages resulting to the defendants from its failure so to comply are sub-

ject to be set off against the plaintiff's demand for the balance due on the purchase-money of the machine. Under this alleged new agreement the defendants were to return the machine to the plaintiff, who was to make certain changes therein, and then ship the same back to the defendants, the plaintiff to pay the freight each way, and then, if the machine was satisfactory, the balance of the purchase-money was to be paid. The plaintiff was not to receive one cent in addition to the original purchase-price of the machine, but was to go to the expense of making repairs and pay the freight both ways. There was no consideration for this agreement. It was purely a voluntary undertaking on the part of the plaintiff. At the time when it was made the plaintiff was in a position where it could have demanded the balance due on the purchase-money, and the defendants, under the new agreement, were under obligation to do no more than what they would be already compelled to do; that is, to pay the balance of the purchase-money. We will not undertake to deal with all of the assignments of error on the different instructions of the judge; as it will sufficiently appear, from what has been said, in what particulars we deem the instructions appropriate as well as wherein we deem them erroneous. A new trial should have been granted.

*Judgment reversed. All the Justices concur.*