802. HAWLEY DOWN DRAFT FURNACE COMPANY *v.*
VAN WINKLE GIN AND MACHINE WORKS.

1. While in a contract of sale there can be no coexistence of express and implied warranties on the same subject, since the one, ipso facto, excludes the other, still this exclusion does not necessarily extend to every feature of the contract. When a known, definitely described article is purchased, the very terms of description used are, generally speaking, so far express warranties as to the kind of article to be supplied that no implied warranty of its fitness to any particular use intended by the buyer arises, though the seller may be cognizant of the particular use contemplated; however, the express warranties contained in ordinary descriptive words of make, size, grade, quantity, etc., are not usually so general in their relation to the subject-matter of the sale as to exclude an implied warranty that the article is merchantable and free from such inherent defects as render it worthless or not reasonably suited to the purposes for which ordinary articles covered by the descriptive terms employed are designed and intended.

2. A verdict will not be set aside as unsupported by the evidence when the amount of it is within the range covered by the testimony, though it may not correspond with the contentions of either party.

Complaint, from city court of Atlanta—Judge Reid. September 21, 1907.

Submitted January 20,—Decided March 30, 1908.

The plaintiff sued for the price of two Hawley Down Draft furnaces which it had contracted to install and did install at the defendant's oil mill in Gulfport, Miss. The agreement was silent as to warranties, except so far as the specific designation of the particular make, size, style, etc., is to be regarded as a warranty. The defendant admitted contracting for the furnaces and that they were installed, and pleaded a failure of consideration, for that the furnaces were wholly worthless and did not accomplish the purposes for which they were intended; "that said furnace is an attachment to be attached to a boiler for the purpose of consuming less fuel in making steam, entirely consuming the coal or other fuel used, and also consuming the smoke caused by the combustion; that said furnaces failed to accomplish either of these objects, and therefore were wholly worthless." The jury rendered a small verdict in favor of the plaintiff, and it excepts. The further facts necessary to an understanding of the case appear in the course of the opinion.

*Tye, Peeples, Bryan & Jordan,* for plaintiff.

*Wimbish, Watkins & Ellis, Frampton E. Ellis,* for defendant.

POWELL, J. (After stating the foregoing facts.)

An express warranty in the sale of goods excludes all implied warranties on the same subject. *Johnson* v. *Latimer,* 71 *Ga.* 470. The rule is sometimes stated in language broad enough to convey the idea that if there is an express warranty as to any feature of the sale, all implied warranties are to be excluded; but we do not think there has ever been any deliberate intention to extend the rule this far; because unless the express and the implied warranties relate to the same thing, there is no reason in law or in logic why one should exclude the other. For example, though the seller of a horse expressly warrants that his title to it is perfect, the implied warranty that the animal is free from latent undisclosed physical unsoundness is not excluded; the two warranties here relate to different subjects, and therefore neither affects the other. "When a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser that it is required for a particular purpose, yet if 'the known, described, and definite thing, which is of the kind and quality called for by the order, be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." *Fay & Eagan Co.* v. *Dudley,* 129 *Ga.* 314 (58 S. E. 826) ; Seitz v. Brewers' Co., 141 U. S. 510 (12 Sup. Ct. 46, 35 L. ed. 837) ; *DeLoach* v. *Tutweiler,* 2 *Ga. App.* 493 (58 S. E. 790) ; *Crankshaw* v. *Schweizer,* 1 *Ga. App.* 363 (58 S. E. 222). There is absolutely no conflict between this statement and the principle announced in the Civil Code, §3555, which provides that in sales without express warranty, the seller in all cases, unless the contract itself expressly or from the nature of the transaction makes an exception, is by construction of law held to warrant that the article sold "is merchantable and reasonably suited to the use intended;" for the expression "use intended," here found, is not equivalent in import to the words "use intended by the buyer." To make the particular plans and purposes of the purchaser a part of the warranty, they must be a part of the contract. For example, a sportsman intending to shoot wild ducks orders cartridges of standard make and specified load; the seller, although he knows the use intended, does not make the individual theories of the sportsman as to the particular form of shell or amount of load he shall use a part of the contract of sale, but he does warrant that the cartridges he delivers

are merchantable and reasonably suited for the purpose for which cartridges of that style and load are manufactured and sold. If the cartridges delivered are improperly manufactured, or the powder is defective or the priming imperfect, there is a breach of the implied warranty; but if no defects of this character exist and the cartridges are up to the standard of that make, there is no breach of warranty even though they be wholly unsuited to the killing of wild ducks. This distinction, which in the very nature of things must exist, no matter how much it may have been obscured by the maze of precedents in which notice of it may have been neglected, is clearly recognized in the leading case of Seitz *v.* Brewers' Refrigerating Co., supra. In that case it appears that Seitz desired to maintain in one of his rooms, in which beer was stored, a constant temperature of 40° Fahrenheit; the refrigerating company manufactured machines designed for the purpose of reducing the temperature of closed rooms; Seitz ordered one of this company's No. 2 machines, intending to use it instead of ice, to obtain the desired low temperature in his beer room, and the company knew of the purpose for which he intended to use it; the machine proved inadequate for this purpose, and Seitz attempted to avoid paying for it, and to set up an implied warranty of fitness for the use he intended, and a breach thereof. The court, through Mr. Chief Justice Fuller, said: "It is not denied that the machine was constructed for refrigerating purposes, and that it worked and operated as a refrigerating machine should; but it is said that it did not so refrigerate as to reduce the temperature of the brewery to 40° Fahrenheit, or to a temperature which would enable defendant to dispense with the purchase of ice. The rule invoked is, that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which it is known to be required; but it is also the rule, as expressed in the text-books and sustained by authority, that where a known, described, and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described,

and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. Benjamin on Sales, §657; Addison on Contracts, Book II, c. vii, p. *977; Chanter *v.* Hopkins, 4 M. & W. 399; Ollivant *v.* Bayley, 5 Q. B. 288; Dist. of Columbia *v.* Clephane, 110 U. S. 212 (28 L. ed. 122); Kellogg Bridge Co. *v.* Hamilton, 110 U. S. 108 (3 Sup. Ct. 537, 28 L. ed. 86); Hoe *v.* Sanborn, 21 N. Y. 552 (78 Am. D. 163); Deming *v.* Foster, 42 N. H. 165. In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in such performance. This is not the case of an alleged defect in the process of manufacture known to the vendor but not to the purchaser, nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, but of the purchase of a specific article, manufactured for a particular use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed." The difference, but also the harmony, existing between the two principles so often confused is thus perfectly established, and it may be seen that the quality of natural justice existing in each principle may be extended to its fullest scope without the slightest infringement upon the other.

In the case sub judice the defendant pleaded not merely that the furnaces were not reasonably suited to the use he intended, the accomplishment of a particular object in his individual plant, but that they were not reasonably suited to the uses for which they were manufactured and sold, namely the consuming of less fuel in making steam and the consuming of all of the fuel used, as well as of the smoke caused by the combustion. The plaintiff did not dispute that these were the objects for which the machines were designed and intended; the defendant did not contend that furnaces of the type ordered, if they had been up to the standard of the plaintiff's manufacture, could not have accomplished these results at his plant; the burden of his complaint is that the plaintiff, instead of installing new furnaces of ordinary efficiency, took some second-hand furnaces, which, after having been subjected

to use for about eighteen months, had been stored in a warehouse for a time, and repainted them so as to give them the appearance of newness, and put these in his plant, and that they were not capable of doing the things usually done by such furnaces, and were wholly worthless; that the failure in these respects at the defendant's plant was not due to the inadaptability of these machines to peculiar conditions prevailing there, but to their inherent deficiencies. Along this line the battle was fought. The court, after stating to the jury that the whole case turned upon the special issue made by the defendant's plea that the purpose of the machine was to save fuel, burn smoke, etc., and that they were worthless because incapable of performing this purpose, succinctly referred the question to the jury, thus: "If you believe they were reasonably suited for the use intended, the guaranty put upon the plaintiff by the law would be satisfied, and the defendant would be under the legal duty to pay for them. If you believe they were valueless and not reasonably suited to the use intended, the defendant would be released from its obligation to pay under the contract, and would not be liable in this suit." The court also explained to the jury that if the failure of the furnaces resulted from conditions prevailing at the defendant's plant, and not from inherent defects, the plaintiff would be entitled to recover. The furnace company not only assigns error upon the charge quoted above, but says that the court should have charged, at its counsel's request (though it is not alleged that the request was in writing, as required by statute; so that nothing except the direct, immediate, and necessary pertinence of the principle to the issue is included in the exception), that "the law of implied warranty does not apply where a specific article of a certain kind is ordered and delivered, except that the seller undertakes that the thing delivered corresponds to the description, and, in fact, is an article of the species, kind, and quality expressed in the contract."

We hope that what we have said above makes it plain that the court below tried the case upon the proper theory, and that, under the particular facts, the specific principle which the plaintiff in error says was pretermitted in the charge was not immediately in point. It may be noted that in the present case the general use for which the machines were designed and the particular result desired by the buyer were identical; so that there was little or no

chance of prejudicing the plaintiff by confusing these two things, which it is frequently necessary to consider separately in order to secure a proper determination of the rights of the parties.

2. As to the contention that the amount of the verdict is not consistent with any phase of the testimony, see the following cases: *Ellis* v. *U. S. Fert. Co.*, 64 *Ga.* 751; *Roberts* v. *Rigden*, 81 *Ga.* 440 (7 S. E. 742); *Mullins* v. *Murphy*, 69 *Ga.* 754; *Taylor* v. *Gilmore*, 3 *Ga. App.* 93 (59 S. E. 325). *Judgment affirmed.*