25466. KREUTZ *v.* McCRAY REFRIGERATOR SALES CORPORATION.

Decided December 1, 1936.

*W. A. Dampier, Rollin A. Stanley, Palmer W. Hicks,* for plaintiff in error.

*A. L. Hatcher, Al. Hatcher,* contra.

MacIntyre, J. Where personal property described as "1 5-88 counter machine, coils and valve (case W-807)," is sold, and the written retention-title contract, in the form of an order signed by both parties, provides that it "states the entire agreement for the purchase" of such property, "and is not modified by any verbal agreement," that "there shall be no alterations or additions to the work herein specified unless agreed upon in writing," that the "responsibility of the" vendor "on this shipment shall cease upon delivery of the goods in good condition to the railroad company," and that "the use of the property described herein, or any portion thereof for a period of five days, constitutes an acceptance of the same as complying with all the terms and particular specifications of this contract, and all claims of damages, errors, or shortage, not filed within that time are hereby waived," this is the purchase of

a known, described, and definite article of a manufacturer or dealer. The defendant testified, in part: "I operate a meat market. I purchased a refrigerated fresh-meat plant and display counter from the plaintiff in this case. . . I bought it to preserve fresh meats. I wanted to preserve the meats to sell them to anybody that wanted to buy them." Beall, a witness for the defendant, testified, in part: "My profession is refrigeration. I have been doing that work for about fifteen years. I would say that I have been in it about twenty-five years, but not small stuff. I was called upon by Mr. Kreutz [the defendant] to come down to Dublin to do some work in his plant. He has a delicatessen case." The court: "You found the refrigerator plant described in that contract [indicating], did you not?" A. "Yes, sir." Cross-examination: "The refrigerator is suitable to hold meat in the bottom, if you will put it down there to where it belongs." Redirect examination: "That machine would have to be rebuilt to serve the purpose for which Mr. Kreutz wants it, and it will take a manufacturer to do it." The other witnesses for the defendant testified, in effect, that they saw spoiled meat in the market of the defendant, and that the counter machine which was delivered to the defendant did not serve the purpose for which he wanted it. "'When a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser that it is required for a particular purpose, yet if the known, described, and definite thing, which is of the kind and quality called for by the order, be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.' *Fay & Eagan Co.* v. *Dudley,* 129 *Ga.* 314 (58 S. E. 826); Seitz v. Brewers' Co., 141 U. S. 510 (12 Sup. Ct. 46, 35 L. ed. 837); *DeLoach* v. *Tutweiler,* 2 *Ga. App.* 493 (58 S. E. 790); *Crankshaw* v. *Schweizer,* 1 *Ga. App.* 363 (58 S. E. 222). There is absolutely no conflict between this statement and the principle announced in the Civil Code, § 3555, which provides that in sales without express warranty, the seller in all cases, unless the contract itself expressly or from the nature of the transaction makes an exception, is by construction of law held to warrant that the article sold 'is merchantable and reasonably suited to the use intended;' for the expression 'use intended,' here found, is not equivalent in import to the words 'use intended by the buyer.' To make the particular plans

and purposes of the purchaser a part of the warranty, they must be a part of the contract. For example, a sportsman intending to shoot wild ducks orders cartridges of standard make and specified load; the seller, although he knows the use intended, does not make the individual theories of the sportsman as to the particular form of shell or amount of load he shall use a part of the contract of sale, but he does warrant that the cartridges he delivers are merchantable and reasonably suited for the purpose for which cartridges of that style and load are manufactured and sold. If the cartridges delivered are improperly manufactured, or the powder is defective or the priming imperfect, there is a breach of the implied warranty; but if no defects of this character exist and the cartridges are up to the standard of that make, there is no breach of warranty even though they be wholly unsuited to the killing of wild ducks." *Hawley Down Draft Furnace Co.* v. *VanWinkle Gin Works*, 4 *Ga. App.* 85 (60 S. E. 1008).

In the instant case, it seems to us that the defendant's testimony went to the effect only that the machine was not reasonably suited to the use the defendant intended, and did not go to the effect that the machine was not reasonably suited to the uses for which the manufacturer professed to make it, or that it was not suitable to perform the ordinary work which the described machine was made to do. In other words, the evidence showed that this was a purchase of a specific article manufactured for a particular use, and did not show that it was unfit, improper, and inefficacious for that use, but did show that in respect to the operation of which in producing a desired result, under the particular circumstances, the buyer found himself disappointed. This is not a case of an alleged defect in the process of manufacture known to the vendor, or of justifiable reliance by the buyer on the judgment of the vendor rather than on his own. In this case we think the written contract was complete within itself, and that the case comes within the rule laid down in Davis Calyx Drill Co. *v.* Mallory, 137 Fed. 332, 334 (69 L. R. A. 973), as follows: "But no implied warranty that a machine, tool, or article is suitable to accomplish a particular purpose or to do a specific work arises where the vendor orders of the manufacturer, or purchases of the dealer, a specific, described, or definite machine, tool, or article, although the vendor knows the purpose or work which the purchaser intends to accom-

plish with it, and assures him that it will effect it. Such an assurance is but the expression of an opinion, when it is followed by a written contract, complete in itself, which is silent upon the subject. The extent of the implied warranty in such a case is that the machine, tool, or article shall correspond with the description or exemplar, and that it shall be suitable to perform the ordinary work which the described machine is made to do." In passing, it might be stated that the general use for which the machine was designed and the particular result desired by the buyer could be identical, as was the situation in *Hawley Furnace Company* v. *Van Winkle Works,* supra; but this is not true in the instant case. See *McCray Refrigerator Sales Corporation* v. *New,* 42 *Ga. App.* 703 (157 S. E. 370), and cit. The judgment being affirmed on the controlling principle above stated, it is unnecessary to discuss the question whether the defendant waived any of his rights under the contract of purchase by a failure to comply with the five-day provision in the written contract to notify the plaintiff that the refrigerator shipped to him did not properly perform. The judge did not err in directing the verdict for the plaintiff.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*