33184. LOVE *v.* NIXON.

Decided October 6, 1950.

447

*Jesse J. Gainey*, for plaintiff.

*L. H. Foster, Cain & Smith, Bell & Baker*, for defendant.

SUTTON, C. J. "Fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party; and in the latter case such misrepresentation renders the sale voidable at the election of the injured party, though the party making it was not aware that his statement was false. Such misrepresentation may be perpetrated by acts as well as words, and by any artifices designed to mislead. A misrepresentation not acted on is not ground for annulling a contract." Code, § 96-202. But, "When the means of knowledge are at hand and equally available to both parties to a contract of sale, if the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller." *Miller* v. *Roberts*, 9 *Ga. App.* 511 (71 S. E. 927). Also, in this

connection, see *Dortic* v. *Dugas*, 55 *Ga*. 485 (6) ; *Wylly* v. *Gazan*, 69 *Ga*. 506 (5a) ; *Brim* v. *Couch*, 184 *Ga*. 310 (191 S. E. 94) ; *Dean* v. *Merchants & Farmers Bank*, 24 *Ga. App*. 475 (1) (101 S. E. 196) ; *Clark* v. *Adams*, 29 *Ga. App*. 496 (1) (116 S. E. 122) ; *Elliott* v. *Dolvin*, 34 *Ga. App*. 788 (131 S. E. 300) ; *Thompson* v. *Bank of Arlington*, 44 *Ga. App*. 686 (2) (162 S. E. 647), and cases cited therein. While it is true that the question of whether the person to whom the alleged false and fraudulent representations were made was negligent in relying upon such representations would ordinarily be a question for a jury, as was stated in the *Thompson* case, supra, and in *Summerour* v. *Pappa*, 119 *Ga*. 1 (5) (45 S. E. 713), if it is apparent from the pleading of a person relying on such false and fraudulent representations that he was negligent in so doing, and such pleading is properly attacked by demurrer, it is the duty of the court to so decide as a matter of law.

The allegations of paragraph 2 of the answer, as amended, including subparagraphs (a), (b), (c), (d), (f), (g), and (h)— in respect to representations as to what the grape vines would produce, if planted in Grady County, the ease of cultivation, where and how the grapes produced could be marketed, and where money could be secured to finance the purchasing and planting of the grape vines—pertain to facts or opinions the truth or validity of which should have been readily ascertainable to one such as the defendant, a farmer living in the locality. No reason why he could not ascertain the truth or validity of the representations is shown. The alleged misrepresentations do not appear to be matter which were peculiarly within the knowledge of the plaintiff. It does not appear that there was any emergency requiring the immediate signing of the contract and preventing any inquiry or investigation on the part of the defendant, nor does it appear that the defendant was in any way prevented from making such an investigation. Instead, it appears that the defendant chose to rely blindly on the representations. Under such circumstances, if the defendant did not avail himself of the means apparently available to determine for himself the truthfulness or falsity of the representation of the plaintiff, he should not be heard to say that he was deceived by such representations, for he was in reality deceived only on account

of his own negligence, while dealing at arm's length with a stranger. On account of the apparent and unexplained negligence of the defendant in relying on the representations, the facts as alleged in that part of paragraph 2 of the answer as amended, as shown in the statement, fail to show fraud in the procurement of the contract as a defense to the action here involved.

■ "If there is no express covenant of warranty, the purchaser must exercise caution in detecting defects; the seller, however, in all cases (unless expressly or from the nature of the transaction excepted) warrants that— . . 2. The article sold is merchantable, and reasonably suited to the use intended." Code, § 96-301. "While, in a contract for the sale of goods, words descriptive of the subject-matter are ordinarily to be treated as an express warranty, a warranty of this character will not, unless inconsistent therewith, exclude the implied warranty of the law, that the thing sold is possessed of no latent defects rendering it inferior as to the quality or unsuited as to the purposes common to the articles of the class described. But in such a case there is no implied warranty that the thing sold will be suited to the purposes of the buyer." *Mayor & Aldermen of Savannah v. United States Fuel Corp.*, 29 *Ga. App.* 573 (2) (116 S. E. 218). The ruling just quoted was in reference to a defense of the buyer that coal purchased as "Blue Gem R.O.M. [run of mine] coal" was not suitable for its intended use by the buyer. In the same connection, see *City of Moultrie* v. *Schofield's Sons*, 6 *Ga. App.* 464 (2) (65 S. E. 315); *City of Jeffersonville* v. *Cotton States Belting & Supply Co.*, 30 *Ga. App.* 470 (3) (118 S. E. 442); *Kreutz* v. *McCray Refrigerator Sales Corp.*, 54 *Ga. App.* 679 (188 S. E. 838); *Fay & Eagan Co.* v. *Dudley & Sons*, 129 *Ga.* 314 (58 S. E. 826). It is clear from the rulings made in the above cases that the warranty implied by law, that the article or articles sold are "reasonably suited to the use intended," refers, not to any particular intended use by the purchaser, even if such intended use is made known to the seller, but to any use for which the article or articles sold are commonly intended. As was stated in the *Kreutz* case, "use intended" as it appears in the statement in the Code is not equivalent in import to "use intended by the buyer."

454

The written contract here involved shows an express agreement for the purchase of certain amounts of specifically named varieties of grape vines, and it purports to be complete within itself. No warranty appears therein to the effect that the vines would be suitable for any particular intended use by the purchaser. The defense as to a breach of warranty is, in substance, that there was a breach of an implied warranty that the vines were suitable for the use intended by the purchaser. Under the circumstances here shown and the law applicable thereto, no such implied warranty was in existence, and, accordingly, that part of the defense identified as Exhibit E in the petition shows no breach of an implied warranty.

■ The judge of the superior court erred in ruling that the judge of the city court improperly sustained the demurrer to those parts of the amended answer to the petition relating to fraud in the procurement of the contract and to breach of an implied warranty, as herein shown.

*Judgment reversed. Felton and Worrill, JJ., concur.*