## 16. DeLOACH MILL MANUFACTURING COMPANY v. TUTWEILER COAL, COKE AND IRON COMPANY.

1. An express warranty may be created as a part of a contract of sale, by the use of such terms of description of the article sold as preclude any danger of mistaking or confusing that article with any other. An express warranty is exclusive of all warranties arising by implication.

2. Where a manufacturer sells iron as Standard Alabama No. 1 Soft, and Alabama Foundry No. 2 Pig Iron, and the purchaser relies upon the description, there is an express warranty only that the articles sold shall be equal to the description. There is no implied warranty in such case that the brands of iron thus purchased shall be reasonably suited for any particular purpose. The description in the invoice by which the iron was bought and sold is equivalent to an express warranty that the goods purchased are what they are described to be; and it is immaterial whether the purchaser knew the purpose for which the buyer intended to use the iron, or whether in fact the iron was suitable for the purpose intended by the buyer, provided the seller furnished the article described, the buyer in such case having preferred an express warranty to those implied by law in the absence of express warranty.

3. The admission of evidence of experiments is largely in the discretion of the trial court; and this discretion, unless manifestly abused, will not be controlled. For evidence of experiments to be admissible, there must be substantial similarity as to the essential and material fact affecting the comparison; if the comparison be predicated upon substantially different facts, the evidence will not be only irrelevant but will tend to confuse the jury.

4. An implied warranty may be deemed to have been waived where the article or commodity purchased (after full opportunity for examination, discovery of its defects, and rejection) is accepted and used.

Complaint, from city court of Atlanta—Judge Reid. March 10, 1906.

Argued January 9,—Decided October 3, 1907.

*Hines & Jordan,* for plaintiff in error.
*DuBignon & Alston,* contra.

RUSSELL, J.   The bill of exceptions calls for a review of the judgment of the lower court in striking the fourth and fifth paragraphs of the defendant's answer and in refusing a new trial.   The paragraphs which were stricken (exceptions being taken pendente lite) were as follows:

"4.   For further plea in this behalf, this defendant says, that on February 6th, 1904, this defendant purchased from the plaintiff, through its agents and brokers, Rogers, Brown & Co., one hundred and twenty-five tons of Standard Alabama Number 2 Foundry Pig Iron at the price of $10.00 per ton of 2240 lbs., f. o. b. cars furnace, Birmingham, Alabama; and on the same day, this defendant purchased from plaintiff, through its said agents and brokers, one hundred and twenty-five tons of Standard Alabama Number 1 Soft Pig Iron at the price of $10.50 per ton, 2240 lbs., f. o. b. furnace, Birmingham, Alabama.   The amount mentioned in plaintiff's petition was made and contracted by defendant solely for and on account of said iron, so sold and to be delivered to it by plaintiff, and without any other consideration therefor.   Said goods were purchased by defendant, as plaintiff then well knew, for the purpose of being manufactured by this defendant at the foundry into various castings used by this defendant in machines made and manufactured by it in its factory in the city of Atlanta; and plaintiff, as a part of the contract of sale and consideration of said account, impliedly warranted and represented that said goods were fit, proper, and reasonably suited for such purposes.   Defendant accepted and purchased said goods for the purpose of manufacturing the same into castings for machines so made and manufactured by it at its said factory, trusting in said representations and warranty of plaintiff, as plaintiff well knew.   Said iron was not fit for said purpose, and was not reasonably suited therefor, the same being dirty iron and containing too little silicon and too much graphitic carbon, and the said iron has always been and is altogether useless and worthless to this defendant.

"5.   For further plea in this behalf, this defendant says that it began using said iron in its said foundry in making said castings, on or about May 15, 1904.   The output of its foundry was thirteen tons per diem.   The necessary cost and expense to this defendant

of making each day's output was $100.00. By reason of said iron, so sold and delivered by plaintiff to defendant, and so used by it in its foundry in making castings as aforesaid, being dirty nor fit and reasonably suited for the purpose of being moulded into said castings, the defendant buying said iron from the plaintiff for the said purpose, and the plaintiff well knowing that the defendant purchased it for said purpose, one third of said output was absolutely worthless and a total waste in the foundry, whereby this defendant sustained a daily loss of $33.33 1-3 for the period of thirty days, making a total loss to this defendant of $1,000.00. This defendant was put to this necessary expense and loss in attempting to use said iron for the purpose aforesaid, and for the purpose for which the same was bought, and before this defendant knew that the defects in said castings were due to the inferior quality of said iron. Said loss and damage to this defendant arise, naturally and according to the usual course of things, from the failure of the plaintiff to deliver to this defendant the iron which it purchased from the plaintiff, and such as the parties contemplated when such contract was made, as the probable result of its breach. Said loss and expense in attempting to use said iron and in converting the same into castings was due solely and directly to said breach of plaintiff's contract to furnish to this defendant Standard Alabama Number 2 Foundry Pig Iron and Standard Alabama Number 1 Soft Pig Iron reasonably suited for the purpose aforesaid, for which this defendant purchased the same. This defendant recoups said loss and damage against the account of the plaintiff sued on in this case."

The effect of the judge's ruling in striking paragraph four was a holding that the contract was one of express warranty and therefore excluded any implied warranty. The fifth paragraph was stricken because, in the judgment of the court, the defendant's damages, if any, were not to be measured by the rule which defendant was endeavoring to apply, if indeed they were not too remote for recovery at all.

We have no difficulty in sustaining the judgment of the lower court in striking paragraph four of the answer. Alabama Iron No. 1 Soft, and Alabama No. 2 Foundry, are as apt terms of description for two grades of iron,—as distinctive and as well understood by those engaged in the iron business, as the different

grades of cotton are known by those engaged in the cotton business. A term that is well known as conveying the idea of identity and individuality of characteristics, quality, and use, and is understood by buyer and seller as such (while this understanding is not always necessary) may import a warranty. Words of description do not always import an express warranty, but they do when (as in the contract in this case) they have reference to an article of property whose features and qualities are so well known to those engaged in the business of producing or selling such article that it can not be mistaken for any other thing. As we have heretofore remarked in *Crankshaw* v. *Schweizer Mfg. Co.,* 1 *Ga. App.* 363, 58 S. E. 222, it is often difficult to determine the line of demarcation between implied conditions and such description as will constitute an express warranty and thereby exclude the warranty implied by law. The determination of the question depends often on the fullness and particularity of the description. If one contracts for quinine, we have an article whose appearance, taste, and effects identify it and distinguish it from other articles; but an implied warranty would exist that the quinine was reasonably suited for the purposes intended. But if I contract for Powers & Weightman's quinine, the express warranty on the part of the seller that the quinine shall be of a particular manufacture or brand excludes any other warranty. In our opinion, the rule excluding all implied warranties where there is any express warranty is illogical, and sometimes works injustice; but it is the settled rule in this State and nearly all of the States of the Union. In *Johnson* v. *State,* 71 *Ga.* 470 (2), the court ruled that "it is only in the absence of an express warranty that resort can be had to an implied warranty; and where there was an express warranty, the court could refuse to charge on the subject of implied warranty."

If the defendant had purchased 175 tons of iron, the law would have implied that it was merchantable and reasonably suited for all the purposes for which it was intended. Civil Code, §3555. But when the buyer specified that he wanted Standard Alabama No. 1 Soft Pig Iron and Standard No. 2 Foundry Pig Iron, the seller expressly warranted that the iron to be delivered would be those two grades of iron and no other, and the presence of the express warranty excluded any implied warranty whatsoever. The very particularity of description created an express warranty. The

buyer relied upon his own judgment exclusively as to the purposes to which the particular iron selected was fit, and relieved the seller of any concern or responsibility, except that he should furnish the exact kind and grade of iron selected by the buyer, identified in the manner indicated by the descriptive term used, and the custom of the iron trade. *Americus Grocery Co.* v. *Brackett,* 119 *Ga.* 489. It may be insisted that the fact that in the exercise of the right of choice we have purchased Powers & Weightman's quinine, or No. 2 corn or Alabama No. 2 Foundry Pig Iron, should not relieve the seller from furnishing quinine that will cure, or corn that will make good white meal, or iron that will make good castings. The question is, did we buy an article whose identity was so well established by description that it could not be mistaken for anything else, and were we furnished with that article?

Standard Alabama No. 1 Soft Pig Iron and Standard Alabama No. 2 Foundry Pig Iron were what the seller contracted to deliver and the purchaser to pay for. Standard Alabama No. 1 Soft Pig Iron is determined by fracture and inspection. The only question, then, that could arise was, was the iron that the DeLoach mills received Standard No. 1 and Foundry No. 2?

The court was right in striking the fourth paragraph of the answer, and we think the fifth paragraph would go with it; for, even if the damages sought are not too remote, the measure of damages which could be recouped would be the difference between the contract price of the iron ordered and the market price of the iron delivered when it was delivered at Atlanta.

In view of the defendant's admissions, it is profitless to discuss any of the grounds of error insisted upon in the motion, except those which pertain to the admission or exclusion of evidence which would illustrate the issue as to whether the iron ordered was that purchased. Under the admissions of the defendant the verdict rendered was inevitable, unless the defendant proved that the iron delivered was not Standard Alabama No. 1, and Standard Alabama No. 2, Foundry; and this it failed to do.

The admission to entitle to open and conclude is contained in paragraph three of defendant's amended answer, and is as follows: "This defendant admits the purchase of the iron for the recovery of the price of which this suit is brought, from the plaintiff at the price set out in said petition, its delivery to this defendant, the

32

making of the account sued on, that the plaintiff is the holder and owner thereof, that said account is past due, and that plaintiff is entitled to recover the amount sued for, unless the defendant makes good its defense set out in said answer." There was only one question left in the case. Was the iron delivered Standard Alabama No. 1 Soft Pig Iron and Standard Alabama No. 2 Foundry Pig Iron? The defendant having assumed the burden of proof, unless it showed that the iron delivered was not Standard Alabama No. 1 Soft Pig Iron and Standard Alabama No. 2 Foundry Pig Iron, the plaintiff was entitled to recover the unpaid balance of the purchase-price in full. If the defendant was not furnished the grades of iron it bought, and proved that fact, then it would be entitled to recoup as damages the difference between the market value at the time and place of delivery and the price paid. The defendant failed to show that the iron was not what it bought, and hence the question of damages could not arise.

In the first and second grounds of the amendment to the motion it is insisted that the court erred in refusing to let a witness testify that Standard Alabama No. 1 and Standard Alabama No. 2 iron had been used in the same way as the iron bought from plaintiff, and made good castings, and that the iron bought from plaintiff did not make good castings. This testimony was addressed to the point in issue, whether the iron delivered was the iron bought; and had we been presiding, we think we should have allowed the testimony. But we are not prepared to hold that the judge erred in rejecting this testimony of experiment, especially in view of the admission of a prima facie case by the defendant and the further fact that the defendant had used all of the iron in its business. The admission of evidence of experiment, as held by this court in *Hudson* v. *Atlanta & West Point R. Co.*, ante, 352, 58 S. E. 500, is a matter peculiarly within the discretion of the trial judge; and this discretion will not be interfered with unless it be apparent that it has been abused.

In our view of this case a discussion of the remaining grounds of the motion would be profitless. The errors assigned would not warrant a new trial. The verdict was right and should not be set aside. Under the admissions of the defendant a verdict in favor of the plaintiff was inevitable. The turning point in the case was, whether the contract of sale included an express warranty, or did

not. Upon this subject see *Henderson* v. *Milling Co.,* 126 *Ga.* 279; *Miller* v. *Moore,* 83 *Ga.* 684 (1); Biddle on Warranties, §111; Seitz v. Brewer's Refrigerating Mach. Co., 141 U. S. 510; Bradford v. Manley, 13 Mass. 144; Bonekins v. Bevan, 3 Serg. & Rawle, 37; Henshaw v. Robins, 9 Metcalf, 83; Hawkins v. Pemberton; 51 N. Y. 198, et cit.; White v. Miller, 71 N. Y. 129. And in the well-considered case of *Dounce* v. *Dow,* 64 N. Y. 411, the facts are practically the same as in this case.

Even if the trial court had been in error in holding that the implied warranty of suitableness was excluded by the express warranty, still the judge did not err in refusing a new trial, because all implied warranties could well be deemed to have been waived by the defendant, who, instead of rejecting the iron, used it after full opportunity to examine it and ascertain whether it was merchantable and suited for the purposes intended or not. *Henderson* v. *Milling Co.,* supra. *Judgment affirmed.*