# CHARLESTON.

SCHAFFNER v. NATIONAL SUPPLY CO.

Submitted March 20, 1917.   Decided April 3, 1917.

1. SALES—*False Warranty—Action.*

   A party injured by a false warranty may maintain an action either in assumpsit or case to recover the resultant damages. (p. 117).

2. SAME—*Action—Deceit.*

   If the declaration be in tort upon the false warranty counts for deceit may be added, and a recovery may be had for the false warranty or for the deceit, according to the proof. (p. 117).

3. SAME—*Implied Warranty of Fitness.*

   Where the buyer of personal chattels discloses to the seller the particular purpose for which such goods are desired, and trusts to the latter's skill, judgment and experience as to what articles

shall be furnished, and the seller accepts the order upon these con-
ditions, there is an implied warranty that the articles supplied
shall be reasonably fit and appropriate for the use to which they
are intended to be applied.  (p. 118).

4.  SAME—*Sale by Description—Implied Warranty—Warranty of Fit-
ness.*

When an article, which the buyer has not seen, is sold by descrip-
tion, there is an implied warranty that the article furnished will
conform to the description.  In such case there is no implied war-
ranty of fitness of the article purchased for any particular purpose,
even though the seller is informed of the use which the buyer in-
tends to make of it.  (p. 124).

5.  SAME — *Seller's Representations — Representations — Action for
Damages.*

When the vendor of an article, which the buyer has not seen,
represents that it is made of a certain material, knowing such
representation to be false, one purchasing such article, relying upon
such representation, may maintain an action for deceit and recover
therein such damages as he may have sustained ·by reason of such
false representations.  (p. 124).

6.  SAME—*Sale by Description—-Inspection and Return.*

Where goods which the purchaser has not seen are sold by de-
scription, the buyer, upon delivery of the goods, is under no obli-
gation to test and·inspect them to determine whether they conform
to the description, and to return the goods in case they do not,
where the failure to conform to description is of such character
as not to be readily discernable.  (p. 128).

7.  SAME—*Sale by Description—Breach of Warranty—Damages.*

In case of a sale of chattels by description, where the seller
knows the purpose for which the goods are to be used, and furn-
ishes goods not conforming to the description, the buyer may re-
cover for the breach of the warranty that. such goods will conform
to the description, all such damages as the parties might reasonably
contemplate would result from a failure to furnish goods of the
kind sold.  (p. 128).

8.  SAME—*Quality of Material—Breach—Recovery of Damages.*

If tubing of a certain weight and material is purchased for tub-
ing an oil well, and the seller furnishes tubing of a lighter weight
and of different material and by reason thereof such tubing breaks
and destroys the well, the purchaser may recover such damages as
he has sustained from the loss of such well.  (p. 128).

9.  SAME—*Breach of Warranty—Recovery of Damages.*

In such case the measure of his damages would be the cost of
providing a new well to take the place of the one destroyed and

such additional amount as may have been expended by him in reasonable efforts to repair the one destroyed, unless it appears that it would cost more to drill a new well than the property is worth, in which case the measure of damages would be the value of the property the development of which is prevented by the destruction of such well and the expenditures made in the reasonable efforts to restore or repair such destroyed well. (p. 130).

10.  SAME—*Sale by Description—Breach of Warranty—Damages.*

In case of the sale of chattels by description, if the seller furnish goods which do not conform to such description and the buyer, without knowing this fact, use such goods for the purpose for which they were intended and is injured thereby, he may recover damages for the injury sustained by him before knowledge that the same do not conform to the description, even though he continue the use thereof after being informed that they do not so conform. (p. 130).

11.  SAME.

Where a sale of chattels is made by description, and goods are furnished which do not conform thereto, and the buyer without knowledge thereof uses the same for the purpose for which they were purchased, which purpose is known to the seller, and from the results obtained by using the same the buyer has reason to believe that they do not conform to the description and makes complaint of this fact to the seller who insists that the goods are suited to the purpose for which they are being used, and that the trouble encountered is with the manner of their use, and the buyer then continues their use and is thereby injured, it will be a question for the jury whether he was justified in continuing the use of the articles upon the seller's protestations, notwithstanding the means of knowledge he has of their non-compliance with the description. (p. 134):

12.  NEGLIGENCE—*Evidence—Admissibility—Custom.*

When the question for determination in a particular case is whether or not there was want of due care, evidence of the customary and usual way of doing the act complained of as being negligently done is admissible. (p. 134).

13.  APPEAL AND ERROR—*Right to Allege Error—Evidence.*

A party to a suit cannot complain that evidence was introduced by his adversary which was not competent, when the only inference to be drawn from such evidence is that the party introducing it is under a heavier obligation than that which the law imposes. (p. 134).

14. Sales—*Implied Warranty.*

> Where the law implies a warranty, evidence of a custom or usage
> not to warrant will not be admitted to prove that no warranty
> exists.   (p. 134).

Error to Circuit Court, Harrison County.

Action of trespass on the case by Jacob F. Schaffner and others against the National Supply Company. Judgment for plaintiffs, and defendant brings error.

*Reversed and remanded.*

*Taber, Daniels & Reed* and *Chas. B. Johnson,* for plaintiff in error.

*Sperry & Sperry* and *Geo. M. Hoffheimer,* for defendants in error.

Ritz, Judge:

The judgment complained of upon this writ of error was rendered by the circuit court of Harrison county in an action of trespass on the case brought for the purpose of recovering damages for injuries which the plaintiffs allege were sustained by reason of the failure of the defendant to comply with its warranties in the sale to them of certain tubing and casing for oil wells. Defendant is a large dealer in supplies used by oil and gas operators including, among other things, tubing and casing used in oil and gas wells. It has offices and stores in practically every oil field in the United States, and has been engaged in this business on this extensive scale for a number of years. The plaintiffs had a lease for oil and gas purposes on a tract of forty acres of land in Harrison county known as the Hildreth tract. They had drilled a well on this lease and at the depth of 3340 feet it produced oil in large quantities. The operations of the plaintiffs were managed largely, if not entirely, by the two partners, George A. Schaffner and Jacob F. Schaffner, both of whom had had long experience in the business of producing oil both as drillers of wells on their own account and for other people. When the first well was completed upon the Hildreth lease, which is designated as Well No. 1, the plaintiffs desired to obtain tubing to insert therein. It appears that in

these oil wells there is inserted casing which goes around the outside of the well and protects it from cave-ins and from water; that after the well is completed it may be allowed to flow without being tubed, but as a rule such wells have inserted in them a tube for the purpose of conveying the oil from the sand in which it is found to the surface. This tube is suspended from the top of the well and extends all of the way down to the sand in which the oil is found, and frequently, as was the case in this instance, oil is pumped through this tube. The two managing partners, George A. Schaffner and Jacob F. Schaffner, called at the office of the National Supply Company in Butler, Pennsylvania, at which place one of said Schaffners resided, with a view of purchasing the tubing for this well No. 1. At that time they had a conference with one C. A. Ralph, the defendant's manager at that point. They explained their needs to him, informing him of the depth of the well and advising him that they wanted the best tubing they could procure for this well, and suggested that they desired to procure what is termed but-end-weld-tubing, or upset-end-tubing, which appears to be a tubing that is enlarged at the joints in order to give it additional strength. Ralph informed them that the defendant did not have such tubing at Butler, and suggested that they go to Pittsburg with a view of procuring it from the defendant at that point. They acceded to Ralph's request, and, accompanied by Ralph, went to the Pittsburg office of the defendant with a view of procuring this material. At that place they were introduced to John M. Wilson, the Pittsburg manager of the defendant. They claim that they advised Wilson of the character of their well, of the depth of it, and of their desire to secure the best tubing they could for the purpose of tubing it, and suggested this upset-end-tubing. Wilson advised them that the defendant did not sell the tubing they mentioned, but that it did have a 4-1/2 pound special iron tubing which had been used by the South Penn Oil Company in the oil fields where plaintiffs were operating, and had given satisfaction, and recommended this tubing to the plaintiffs. Plaintiffs thereupon purchased 3340 feet of this 4-1/2 pound special iron tubing and sufficient

casing to make up a carload. This states the transaction in accordance with the contention of the two plaintiffs who were present, and while the material part of this is denied by Wilson, for the purpose of this review we must treat these statements as correct. Wilson claimed that he did not sell 4-½ pound special iron tubing, and that the defendant was not at that time selling iron tubing at all, and had not sold any for sometime prior to that date. As a result of this purchase there was shipped to the plaintiffs 3340 feet of tubing and sufficient casing of the description ordered to make a car load. When the tubing arrived plaintiffs inserted it in their well No. 1 and for several months it gave them no trouble. While they were operating this well No. 1 with this tubing in it, but before it began to give them any trouble, they completed two more wells on the Hildreth lease known as Well No. 2 and Well No. 3. When well No. 2 was ready to have the tubing placed in it and they needed the casing for these wells, one of the plaintiffs called the office of the defendant at Salem by telephone and ordered the tubing and casing necessary, simply specifying that the tubing was to be the same as that purchased by plaintiffs at Pittsburg for their well No. 1, and specifying the size of the casing desired. Mr. Schaffner, who ordered this material over the telephone, states that he believed at the time he made the order that the tubing which had been furnished for well No. 1 was 4-½ pounds special iron tubing, and that up to that time it had not given them any trouble. He therefore believed that by ordering the same kind of tubing purchased at Pittsburg he would get 4-½ pound special iron tubing. It does not appear in regard to the orders for the casing, that there was any direction given for any particular kind except as to the diameter of the pipe desired. After this tubing had been in well No. 1 for a few months it broke and fell into the well. Plaintiffs succeeded in extracting it and after conecting it up re-inserted it in the well. In a short time it again parted, and this trouble continued until at last they were unable to extract from the well the tubing which had fallen therein, and the well was thereby rendered unfit for the purpose for which it had been used.

Part of the casing furnished by the defendant to the plaintiffs was used in casing well No. 3. When the 5-3/16" casing was placed in the well it was found that it leaked and did not protect the well from water. The casing was withdrawn and the joints that were on the bottom were transferred to the top and the joints tightened, and it was again inserted in the well. It still continued to leak, however, and plaintiffs were unable to so manipulate this casing as to prevent the well from being drowned out. Part of the tubing purchased from the defendant was also inserted in this well and plaintiffs had the same trouble with it that they had with it in well No. 1, and in the end this well was rendered of no value as an oil well, and had to be abandoned.

Plaintiffs then brought this suit to recover damages for the injury sustained by them by the loss of these wells Nos. one and three. They base their claim for damages upon three grounds: First. that there was an implied warranty at the time the plaintiffs purchased the casing and tubing that the same would be fit for the purpose for which it was intended; Second. that there was an implied warranty upon the part of the defendant that the material furnished by it would comply with the particular description by which it was sold; and, Third. that the defendant was guilty of fraud and deceit in furnishing to the plaintiffs steel tubing when it had sold them iron tubing.

The first question presented is, whether the plaintiffs can maintain an action on the case for a breach of warranty and join therewith a count for deceit, as was done in this instance. In *Trice* v. *Cockran*, 8 Gratt. 442, it is held that case is a proper remedy for the breach of an express warranty of soundness of a slave or other personal chattel sold.

In *Schuchardt* v. *Allens*, 1 Wall, 359, the court held that either case or assumpsit might be maintained to recover damages for a breach of a warranty, and in the event the action was on the case for tort a count for deceit might be added to the special count in case, and a recovery be had for the false warranty, or for the deceit, according to the proof.

It seems to be well established that a suit for a false war-

ranty may be brought either in assumpsit or in case, and that in the event the latter form of action is selected a count may be added for deceit. *Gerst* v. *Jones*, 32 Gratt. 518; 1 Chitty's Pleading, 137; *Dushane* v. *Benedict*, 120 U. S. 636.

Plaintiffs' first contention is that the defendant impliedly warranted that the material furnished by it for the purpose of tubing and casing the oil wells above referred to would be reasonably fit for that purpose; that this warranty arises by reason of the fact that the defendant knew for what purpose the plaintiffs intended to use this material, and knew that plaintiffs relied upon it to furnish such material as would be fit for the purpose for which it was intended. The court instructed the jury upon this theory of the case, and should it be determined under the facts that there was not such an implied warranty of fitness, the court's instruction in this regard was error. The question of when an implied warranty of fitness arises is one that has been dealt with by the courts in many instances. That an implied warranty, that the articles furnished by the seller are fit for the purpose for which they are intended, exists in certain cases there is no doubt. Where the buyer discloses to the seller his needs and the purpose to which the goods purchased are to be applied, and leaves it to the judgment of the seller to supply articles which will meet those requirements, then the seller, if he accept the order, will be taken to impliedly warrant that the articles he selects will meet the requirements of the buyer, but in order to raise this implied warranty these conditions must all exist. The conditions under which such a warranty will be implied are laid down in the case of *Jones* v. *Just*, L. R. 3 Q. B. 197. This case is cited by most of the courts in discussing this question, and the doctrine there stated by Judge Mellor meets with general approval. The conditions under which warranties arise for the sale of personalty was stated by the learned judge in that case as follows: "First, where goods are in esse, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim caveat emptor applies, even though the defect which exists in them is latent, and not discoverable on examination, at least where

the seller is neither the grower nor the manufacturer. The buyer in such a case has the opportunity of exercising his judgment upon the matter; and if the result of the inspection be unsatisfactory, or if he distrusts his own judgment he may if he chooses require a warranty. In such a case, it is not an implied term of the contract of sale that the goods are of any particular quality or are merchantable. So in the case of the sale in a market of meat, which the buyer had inspected, but which was in fact diseased, and unfit for food, although that fact was not apparent on examination, and the seller was not aware of it, it was held that there was no implied warranty that it was fit for food, and that the maxim caveat emptor applied.

Secondly, where there is a sale of a definite existing chattel specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty.

Thirdly, where a known described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described, and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

Fourthly, where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied. In such a case the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own.

Fifthly, where a manufacturer undertakes to supply goods, manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a mer‧chantable article.''

In Mechem on Sales, §§1343 and 1344, the author treats of this same question, and very clearly states the doctrine to

be: "A further question arising in these cases of executory sales is that of the existence of an implied warranty of fitness for a contemplated use, as where a manufacturer or dealer is called upon or proposes to furnish an article which shall be suitable for some particular purpose which the buyer has in view and which he discloses to the seller."

"The rule of *caveat emptor* cannot apply here for the same reasons which give rise to the implied warranty of merchantability. No specific chattel is had in view. The buyer discloses to the seller his need, and trusts to the judgment, skill or experience of the seller to supply an article which shall be suitable for the buyer's purposes, and which the seller, by accepting the order, impliedly agrees to produce. The rule here, therefore, is that, where the buyer, disclosing the purpose to be accomplished, orders an article to supply that purpose from a manufacturer or dealer in such articles, trusting to the latter's skill, judgment or experience to determine what the article shall be, the seller, by accepting the order, impliedly agrees that the article which he supplies shall in fact be reasonably fit and appropriate to the purpose so disclosed."

In 35 Cyc. page 399, it is stated that: "There is no general implication of warranty that the goods sold are fit for the purpose for which they are purchased if the seller is not informed of such purpose, especially where the buyer inspects or has an opportunity to inspect the goods; but an implied warranty of fitness will arise if they are purchased for a particular purpose of which the buyer informs the seller, and the rule applies especially if the seller is a dealer in the article or is a manufacturer thereof. If, however, a specific article, or one known, defined, and described, is ordered and furnished there is no implied warranty of fitness for particular purpose, although the seller is informed of such purpose, for the reason that an undertaking as to fitness is not implied when the buyer gets what he bargained for. So too there is no implied warranty that the article is as suitable for the purpose as other articles of the same kind."

Williston on Sales, §236, says: "If the buyer either en-

ters into an executory contract for the purchase of goods exactly described, or makes an executed purchase of such goods, while he may be able to assert an obligation on the part of the seller to furnish merchantable goods of that description, unless the description itself precludes merchantability, he cannot regard the seller, even though the seller be the manufacturer of the goods, as warranting that they are fit for any more special purpose than that which merchantable goods of the agreed description necessarily fulfill. By exactly defining what he wants the buyer has exercised his own judgment instead of relying upon that of the seller.''

We conclude from these authorities that an implied warranty of fitness of goods will arise when the buyer discloses to the seller his needs or the purpose to which he intends to apply the goods purchased, and orders from the seller such goods as will meet those requirements, leaving it entirely to the judgment of the seller as to what particular goods he will supply; but where the buyer discloses to the seller the purpose for which he desires the goods and suggests that an article of a particular kind is desired by him, and the seller cannot supply the particular article desired, but advises the buyer that he does have an article which is being satisfactorily used by others for similar purposes, and recommends such other article, and the buyer thereupon orders such other article, there will not arise any implied warranty that the goods furnished will be fit for the purpose to which the buyer intends to apply them. The buyer will be taken to have exercised his judgment in the selection of the goods described, and if the seller furnish articles which conform to the description by which they are purchased he will have met the obligation of his contract. 35 Cyc. 399; Williston on Sales, §236; Mechem on Sales, §§1343 and 1344; *Jones* v. *Just*, 3 L. R. Q. B. 197; *Ollivant* v. *Bayley*, 5 Q. B. 288; *Thompson Mfg. Co.* v. *Gunderson*, 49 L. R. A. 859; *Beggs* v. *Brewing Co.*, 27 R. I. 385; *Milwaukee Boiler Co.* v. *Duncan*, 87 Wis. 120; *Tilton Safe Co.* v. *Tisdale*, 48 Vt. 83; *Davis Calyx Drill Co.* v. *Mallory*, 137 Fed. 332; *Peoria Grape Sugar Co.* v. *Turney*, 175 Ill. 631; *DeLoach Mill Mfg. Co.* v.

*Tutweiler Coal, Coke and Iron Co.,* 2 Ga. App. 493; *Wheaton Roller Mill Co.* v. *John T. Noye Mfg. Co.,* 66 Minn. 156; *American Home Savings Bank Co.* v. *Guardian Trust Co.,* 210 Pa. St. 320; *Jarecki Mfg. Co.* v. *Kerr,* 165 Pa. St. 529; *Day* v. *Mapes-Reeve Construction Co.,* 174 Mass. 412; *Wisconsin Red Pressed-Brick Co.* v. *Hood,* 54 Minn. 543; *Goulds* v. *Brophy,* 42 Minn. 109; *John A. Roebling's Sons Co.* v. *Southern Power Co.,* 142 Ga. 464; *Seitz* v. *Brewers' Refrigerating Machine Co.,* 141 U. S. 510; *Grand Avenue Hotel Co.* v. *Wharton,* 79 Fed. 43; *Kansas City Bolt & Nut Co.* v. *Rodd,* 220 Fed. 750.

The plaintiffs cite a number of authorities to sustain their contention that in this case there is an implied warranty that the tubing furnished by the defendant would be fit for the use to which plaintiffs intended to apply it. A review of these cases, however, discloses that they are not in conflict with the doctrine laid down in the authorities above cited. Among the cases relied on by the plaintiffs is that of *Jones* v. *Bright,* 5 Bing. 533. In that case the subject matter of the contract of sale was copper for a ship, and the facts were that the plaintiff purchased from the defendant, the manufacturer, copper for sheathing a ship. The defendant knew the object for which the copper was wanted and said, "I will supply you well." The copper furnished turned out to be unfit for the purpose of sheathing the ship, and the court held that the seller was liable upon an implied warranty of fitness. It will be noticed in that case that the article to be furnished was left entirely to the judgment of the seller, it not being agreed upon between the parties what particular thing should be supplied to meet the buyer's needs, while in the case at bar it was agreed upon between the parties that tubing of a certain size, weight, and made of certain material should be supplied.

The same may be said of *Brown* v. *Edgington,* 2 Man. & G. 279, except that in that case a rope which was ordered for a particular purpose, and which the seller was to select, was involved instead of copper sheathing.

The case of *Gerst* v. *Jones,* 32 Gratt. 518, also falls within the same class. In that case the seller undertook to furnish

boxes for packing tobacco. No agreement was had between the parties as to the material of which the boxes would be made, nor was anything more agreed upon than that the boxes were for the particular purpose for which the buyer intended to use them, and it was held that the seller's undertaking was to furnish boxes that would be fit for that purpose, and that there was an implied warranty to that effect.

All of the cases cited by the plaintiffs can be easily distinguished from the case at bar. Here the parties after a conference agreed on what should be furnished for the buyer's purpose. The seller told the buyer what he had; told the buyer that it was being satisfactorily used for that purpose by others, and recommended it to the buyer for his purpose; and the buyer thereupon ordered the quantity necessary for his needs. If it should be held that under these circumstances there was an implied warranty that this tubing should be fit for the purpose to which it was intended to apply it, it would be inconsistent with the other contention made by the plaintiffs, that there is an implied warranty that it would correspond with the description by which it was sold. The plaintiffs contend that the defendant was under obligation to furnish 4-1/2 pound iron tubing, and that there was an implied warranty that the tubing furnished would be 4-1/2 pounds in weight, and would be made of iron. Suppose it should turn out that tubing of this description was not fit for plaintiffs' needs; that plaintiffs' needs could not be met by the use of iron tubing at all, but that tubing made of some other substance was necessary to be used, can it be said that the defendant would be under the obligation to furnish wooden tubing, we will say, which would be necessary and proper to meet the reasonable requirements of the plaintiffs under an implied warranty to furnish an article fit for the use to which it is intended to be applied, and also that it must furnish iron tubing under the implied warranty to furnish material conforming to the description by which it was sold? It would be entirely inconsistent to lay down a rule which would raise an implication of a warranty of fitness, and also a warranty of reasonable conformity to description as to the same transaction.

This brings us to a consideration of plaintiffs' next contention, that there is an implied warranty that the article furnished would conform to the description of the article sold. Where goods are sold by a particular name, title or description, there will be a warranty implied that the goods furnished are of the specific kind and quality which such name, title or description indicates in all cases where the goods are not open to observation, or in which, though the goods were inspected, the want of identity with the description is not apparent upon such inspection. Mechem on Sales, §1334; Williston on Sales, §231.

"When an article which the buyer has not seen is sold by description there is an implied warranty that the article shall be of the kind described, but no warranty of quality will be implied, or fitness for a particular purpose, except that when the goods are described as of a particular grade or quality well known in the trade a warranty that they are of such grade is implied." 35 Cyc. 403.

In *Wilson* v. *Wiggin*, 73 W. Va. 560, it was held in the first point of the syllabus:—"In the sale of lumber of a specified quality and grade, executory for future delivery, the buyer having no opportunity for inspection but relying on the seller to select, there is an implied warranty that the lumber furnished shall be of the quality and grade specified."

The doctrine that where a seller contracts for the sale of an article by a particular description there is an implied warranty that the article delivered conforms to such description seems to be fully supported by the authorities in this country. *Americus Grocery Co.* v. *Brackett,* 119 Ga. 489, 46 S. E. 657; *Timken Carriage Co.* v. *Smith,* 123 Ia. 554; 99 N. W. 183; *Morse* v. *Moore,* 83 Me. 473, 23 Am. St. Rep. 783, 22 At. 362, 13 L. R. A. 324; *Fairbank Canning Co.* v. *Metzger,* 118 N. Y. 260, 16 Am. St. Rep. 753, 23 N. E. 372; *Lenz* v. *Blake,* 44 Or. 569, 76 Pac. 356; *Northwestern Cordage Co.* v. *Rice,* 5 N. D. 432, 57 Am. St. Rep. 563, 67 N. W. 298; *Wisconsin Red Pressed-Brick Co.* v. *Hood,* 60 Minn. 401, 51 Am. St. Rep. 539, 62 N. W. 550; *Leavitt* v. *Fiberloid Co.,* 196 Mass. 440, 82 N. E. 682; *Interstate Grocer Co.* v. *Bent-*

*ley*, 214 Mass. 227, 101 N. E. 147; *Coleman* v. *Simpson*, 143 N. Y. Supp. 587; *Ross* v. *Northrup*, 156 Wis. 327, 144 N. W. 1124; *Handy* v. *Roberts*, 165 S. W. 37 (Texas).

In the case of *Handy* v. *Roberts*, 165 S. W. 37, it is held: "Where a particular article is sold by description, there is ordinarily an implied warranty that it shall be of the kind described."

So in the case of *Coleman* v. *Simpson*, 143 N. Y. Supp. 587, it is stated: "There is an implied warranty on the part of every seller, whether manufacturer or not, that the article sold is identical with the article bought."

There was evidence in this case upon which the jury might find that the defendant sold to the plaintiffs special 4-½ pound iron tubing, and if such was the case the defendant was under obligation to deliver tubing corresponding to that description, and there is an implied warranty upon its part that the tubing delivered pursuant to that contract fits the description by which it was sold. Upon this question we think the court below properly instructed the jury.

Defendant contends that it was error to submit this case to the jury upon the count for fraud and deceit, its contention being that the evidence does not justify the conclusion that the defendant's agent Wilson was guilty of any fraud or deceit in making the sale, even should the jury so find. The evidence upon this question is conflicting. One of the Schaffners testifies that Wilson sold 4-½ pound special iron tubing, and the other one testifies that while he does not recall that there was a positive representation that the tubing was iron, all of their conversation was in regard to iron tubing. The evidence is conclusive that the tubing furnished was not iron, and there is evidence that it was not 4-½ pounds in weight. Wilson admits that the defendant never intended to furnish iron tubing, and if the jury found, and they could do so from the evidence, that he did agree to furnish iron tubing, then it might well be inferred that there was a fraudulent intent upon his part to procure this contract from the plaintiffs for one sort of material and furnish another, and they might well go further and find that being false in this regard he might have also at the time in-

tended to furnish underweight tubing from the fact that such underweight tubing was furnished.

In 12 Ruling Case Law, p. 335, it is stated: ''Even where knowledge of the falsity of the representations is necessary to constitute fraud, it is not indispensable that the party making them should have actually known them to be false at the time when they were made. There are cases in which the law implies or presumes knowledge, and in which, therefore, the representation may, in contemplation of law, be made with knowledge of its falsity, so as to afford a right of action in damages, and, a fortiori, ground for equitable proceedings, without actual knowledge of either its truth or falsity. Thus, such knowledge is presumed to exist where false representations are made recklessly without regard to their truth or falsity, or are made as of one's own knowledge when in fact he has no knowledge on the subject, or when the situation or means of knowledge of the person making them are such as to make it his duty to know the facts, or where the representations are made for a fraudulent purpose. In these cases proof of scienter is not dispensed with. It is simply a question of the method and quantum of proof.''

The Am. & Eng. Ency. of Law, vol. 14, p. 86, says: ''By the overwhelming weight of authority, in order to render a person liable for false representations in an action of deceit, it must be shown that he made the representations *scienter*,—that is, either with actual knowledge of their falsity, or under such circumstances that the law will imply or impute knowledge, as in the case of reckless statements, without knowledge whether they are true or false, representations made for a fraudulent purpose, though without actual knowledge of their falsity, and representations accompanied by a false assumption of knowledge, express or implied. As a general rule an action of deceit cannot be maintained if a false representation is made in the honest belief that it is true.''

In 20 Cyc. at p. 45, the doctrine is likewise laid down as follows: ''Where a vendor in a sale or exchange of real or personal property makes false representations as to material facts relating to the property, having at the time knowledge

that his statements are false or what the law regards as equivalent to such knowledge, and intending that the purchaser shall rely upon them as an inducement to the purchase, he becomes liable to an action of deceit in case the purchaser, acting in reliance upon the representations, consummates the purchase and suffers loss thereby. Aside from the doctrine of *caveat emptor,* which is discussed in another connection, the rule just stated applies to misrepresentations as to the title of the property, the quality and condition of the land that forms the subject-matter of the sale, the quantity of land in the tract to be sold, the boundaries or the location of the land, the identity of particular property, the quantity of chattels or goods in a lot sold, the quality and soundness, kind, or nature of personal property, the character, habits, and usefulness of animals sold, as to extrinsic facts materially affecting the value of the property, and as to the amount or extent of a business or trade the good-will of which is the subject of sale. Although the vendor has no actual knowledge of the fact in question, yet if it is one susceptible of accurate personal knowledge on his part, and by reasonable inquiry and examination might be ascertained by him, his positive false representations made as of his own knowledge and for the purpose of inducing the sale are actionable if relied on by the purchaser to his injury.''

In *Handy* v. *Roberts,* 165 S. W. 37, the court said apropos of the question of furnishing different material from that which was contracted to be furnished: ''If the seller of oats represented that they were of a certain kind, but knowingly delivered a wholly different variety with the intention that the purchaser should receive them for the kind agreed to be delivered, the seller was guilty of actionable fraud which would support an action in the nature of deceit by the purchaser.''

In *Litchfield* v. *Hutchinson,* 117 Mass. 195, the court said: ''If a person states, as of his own knowledge, material facts, which are susceptible of knowledge, to one who relies and acts upon them as true, it is no defence, if the representations are false, to an action for deceit, that the person making them believed them to be true, although the declaration al-

leges that the representations were false, and that the defendant made them knowing that they were false.''

In this case, under the evidence, it was for the jury to say whether Wilson made a contract to sell iron tubing. It is admitted that it was to be 4-½ pounds in weight. As before stated, the jury might find from the evidence that Wilson did sell iron pipe instead of steel pipe, and if they found such to be the fact, and also found as a fact that the pipe furnished was not 4-½ pounds in weight, they might very well infer from the fact that he agreed to furnish iron pipe, knowing that he was going to furnish steel pipe, that he also agreed to furnish pipe 4-½ pounds in weight with the intent to supply pipe of a lighter weight. *Krumm* v. *Beach,* 96 N. Y. 398; *Cabot* v. *Christie,* 42 Vt. 121; *Phillips* v. *Jones,* 12 Neb. 213; *Culver* v. *Avery,* 7 Wendell, 380; *Hanscom* v. *Drullard,* 79 Cal. 234; *Savage* v. *Stevens,* 126 Mass. 207; *Harmon* v. *Blackwell,* 223 Fed. 440; *Marmet Coal Co.* v. *People's Coal Co.,* 226 Fed. 646; *Grand Rapids R. I. Co.* v. *United States,* 234 U. S. 762.

Defendant further insists that the plaintiffs, having accepted the material furnished them by the defendant under the contract, cannot now complain that such material was not a compliance therewith. They contend that the plaintiffs should have inspected this material when it was delivered to them and ascertained whether or not it was the material which they purchased; that they should have weighed the pipe to find out whether or not it corresponded with the warranty of the defendant, and should also apply to it such tests as would have disclosed to them that it was steel instead of iron. Is there a duty upon the purchaser of an article which is sold to him by a particular description to inspect and test it upon delivery to see that it complies with the description by which it is sold? In Mechem on Sales, at §1334, it is said: ''While the distinction made by the English courts is clear enough and undoubtedly sound, so far at least as *executory* contracts are concerned, the buyer not being obliged to accept a tender of goods of some other kind than that which was agreed upon, the prevailing rule in the United States regards an *executed* sale of goods by a

particular name, title or description as importing a warranty on the part of the seller that the goods are in fact of the species, kind and quality which such name, title or description indicates in all cases in which the goods were not open to observation, or in which, though the goods were inspected, the want of identity was not apparent upon such inspection."

In *Gould* v. *Stein,* 149 Mass. 570, 5 L. R. A. 213, the court held that: "The fact that the purchaser had an opportunity to examine the goods and actually made such examination as he wished, will not necessarily do away with the effect of the warranty. He is not bound to exercise his skill, having a warranty, but may rely on that."

In *Kansas City Bolt & Nut Co.* v. *Rodd,* 220 Fed. 750, it is held: "The doctrine that an implied warranty does not survive acceptance does not apply, unless the acceptance is with full knowledge of all the conditions affecting the character and quality of the article."

A like holding was made in *Long* v. *Armsby,* 43 Mo. App. 253, as follows: "A sale by description imparts a warranty that the property sold is of that description, and whether the vendee is able to inspect them or not, it is an implied term of the contract that the goods shall reasonably answer such description, and, if they do not, it is unnecessary to put any other question to the jury. The action of the trial court in giving and refusing instructions in this case approved."

In *Bagley* v. *Cleveland Woolen Mill Co.,* 21 Fed. 159, it is held: "A manufacturer of steel having, in obedience to several orders from a customer, furnished the latter with steel of a certain quality, if, upon receipt of a subsequent order from the same customer for the same article, he supplies an inferior quality, he is liable upon his undertaking that the steel was of the quality ordered, and such liability is not lessened by the fact that the customer did not avail himself of his opportunity to test the steel before using it."

We find from the authorities, and the conclusion is justified by reason, that where the buyer purchases goods by particular description there is a warranty that the goods furnished will conform to that description, and he can rely

upon this warranty. He must use the faculties with which nature has endowed him when the goods are presented, but he need not institute any tests or make inspections to detect differences between the goods furnished and the goods bought other than is observable from ordinary observation. The seller has undertaken to furnish goods of the particular class and he cannot remove the obligation which rests upon him to furnish those goods and place it upon the buyer. It is the seller's duty to determine in the first instance that the goods he furnishes are of the class he sold, and where there is a warranty that such is the case the buyer may rely upon that warranty. In case such warranty proves to be false he may maintain his action for the damages resulting therefrom, unless it appears that the defects or deficiencies in the articles furnished were either known to the buyer or were such as would have been known if he had exercised his ordinary faculties of observation.

Contention is made that the plaintiffs ought not to be allowed to recover damages for the loss of the two wells referred to in the evidence, for the reason that before the tubing and casing were inserted in these wells at the time at which they were destroyed by the breaking of the tubing, plaintiffs knew that the tubing was not iron, and also had information that it was because of defects in the tubing that the breaks therein had theretofore occurred. It is true that this tubing had parted on several occasions before the time it fell in the well, and plaintiffs were unable to recover it. Some of their employes had informed them that the tubing was not good, and they also knew before this time that it was not iron. Complaints were made to the defendant as these troubles arose, the plaintiffs insisting that their troubles were because of the character of the material furnished them by the defendant. On all of these occasions, however, the defendant contended that such was not the case; that the difficulties encountered by reason of the breaking of the tubing and leaking of the casing was not the fault of the casing or the tubing, but was due to the improper method adopted by the plaintiffs in using this material. In fact, at the time of the trial, the principal matter in dispute was whether the injury

was caused by the improper methods adopted by the plaintiffs in tubing and casing their wells, or the insufficiency of the material furnished by the defendant. It must be remembered that plaintiffs had purchased this material and had a considerable sum of money invested in it, and it would be but reasonable to suppose that even though it did not comply strictly with what they thought they were getting they would use it if it could be done without taking unreasonable chances of loss. They were encouraged to do this by the action of the defendant and the plaintiffs now say that defendant cannot complain because it was taken at its word and loss resulted therefrom. It also appears that considerable injury was done the plaintiffs by the breaking of the tubing before they discovered that it was not iron tubing and, of course, any damages which might have resulted from this injury should not be denied them because of their subsequent use of the tubing with knowledge of the facts. But do the facts in this case warrant the conclusion that because the plaintiffs attempted to adapt this tubing to their needs they were guilty of such negligence as would bar any recovery for a resultant injury caused by insufficiency of the tubing? The test to be applied in this case, as in all others of this character, is what would a reasonable man do under the circumstances? Undoubtedly plaintiffs had reason to believe prior to the last time they made use of the tubing that it was not sufficient for the purpose for which they needed it, but would and ought they to be barred from submitting the question to the jury as to whether their subsequent conduct in continuing the use of the tubing was induced or procured by the protestations of the defendant that the fault was not with the tubing at all, but was with the manner of its use? We think under the circumstances presented here that the question was properly submitted to the jury, and if the jury came to the conclusion that the plaintiffs were warranted in their continued use of the tubing under the facts proven, and that their conduct under the circumstances was such as would be expected of a reasonable man under like circumstances, they would not be barred from recovering damages resulting from the insufficiency

of the material furnished them. *Bagley* v. *Cleveland Rolling Mill Co.*, 21 Fed. 159; *Cleveland Linseed Oil Co.* v. *Buchanan*, 120 Fed. 906; *Leavitt* v. *Fiberloid Co.*, 196 Mass. 440; *Rorer Iron Co.* v. *Trout*, 83 Va. 397.

Complaint is made that the court below erred in instructing the jury that the plaintiffs were entitled to recover as the measure of their damages the value of the wells as oil wells, less any value they might have after their destruction. The criticism of this instruction is that it in effect allowed the jury to award the plaintiffs damages for the full value of the property and would not limit the recovery to compensation for the injury. Of course, it is well settled that damages in cases like this are awarded as compensation for an injury inflicted, and it may generally be said that only such damages should be allowed as will make the injured party whole. In this case the plaintiffs' property was not taken from them. The wells were simply a means used to convey the oil from its place in the subterranean sand to the surface of the earth, and the fact that one of these wells, or both of them, might be rendered unfit for this purpose would not deprive the plaintiffs of their oil still remaining in place in the ground. This could be reclaimed by them by drilling another well for the purpose. It will be thus seen that if the effect of the measure of damages adopted by the court was to allow the jury to include in its estimate the value of the oil which would have been conveyed through those wells to the surface of the earth, it was an improper one. We are not prepared to say that this is the proper construction of the language used by the court below. The jury was limited in its inquiry to ascertaining the value of these wells as oil wells. Their value as oil wells is simply what they are worth as a means of conveying the oil to the earth's surface. The witnesses who testified upon this question did not state upon what basis they arrived at the value of these wells as oil wells. Ordinarily the cost of producing such a well would be its value, and would limit the right of plaintiffs' recovery, for while the oil remains in place the plaintiff can reclaim it through another well drilled in close proximity to the well destroyed, and the only loss sustained by him

would be the cost of putting down such additional well. Of course, if plaintiffs had expended money in trying to repair the damage done to these wells and were unsuccessful in their attempts in that regard, and such expenditures were made in the exercise of reasonable judgment, they would be entitled also to be compensated for such expenditures. We think the proper measure of damages in a case like this would be the cost of repairing the injury inflicted either by the extraction of the pipe in the well where it had fallen, or in case this could not be done, then by drilling another well to take the place of the one destroyed. *Donnan* v. *Penna. Torpedo Co.*, 26 Pa. Sup. Ct. 324. The measure of damages adopted by the court below may mean no more than this, but in as much as it is contended that the instruction is susceptible of a different meaning this ambiguity can be cleared up on a re-trial of the case.

Defendant complains that the court permitted witnesses to testify over its objection that the work of inserting the tubing and casing in these wells was done in the customary manner. It contends that the question at issue was not whether this work was done in the ordinary and customary way, but whether it was properly done. It is true that the question to be determined by the jury was not what was customary in such cases, but whether the particular work was done in a proper way. The manner in which this work was done was proven by the parties who did it, and we think it is clear that testimony of persons engaged in doing the same class of work, that this was the ordinary and customary way of doing it is competent to show that the plaintiffs were exercising due care in the application of the pipe. In *Canadian Northern R. Co.* v. *Senske*, 201 Fed. 637, it was held that where the question was whether certain work of inspection was done in a proper manner it was competent to prove that the manner in which it was done was the customary and ordinary way of doing that work.

So in *Shannahan* v. *Empire Engineering Corporation*, 204 N. Y. 543, 98 N. E. 9, it was held that when such a question of negligence is involved general usage and practices are competent to show ordinary care. The common usage of

the parties is a test of negligence, but not a conclusive or controlling test. In *Bowles* v. *Virginia Soapstone Co.,* 115 Va. 690, 80 S. E. 799, it was declared that the issue of ordinary care depends upon the circumstances of the particular case, and that it is ascertained by the general usage of the parties. So in 29 Am. & Eng. Encyc. of Law, 418, it is stated: ''As a general rule it may be said that whenever the law condemns an act as negligent, evidence of a custom or usage to do such act is not admissible to show that the act was not negligent. Thus, a common carrier cannot excuse an act on its part which the law brands as negligent by proof that other carriers conduct their business in the same manner. But when the question is whether or not there was want of due care in any particular case, evidence of usage is admissible to show what constitutes due care as applied to that particular case. 'Ordinary care' is not measured by a fixed rule, but by the usages of different places and trades.

''*   *   *   *  And so, where the plaintiff's injury was caused by an act on his part which the law regards as negligent *per se,* he cannot excuse his contributory negligence by proof of a custom on the part of others to do the same act in the same way. But where an act is not negligent *per se,* the plaintiff, to rebut a charge of contributory negligence, may introduce evidence of a general custom among persons, experienced in the performance of the same act, under similar circumstances, to perform it as he did.''

From these authorities it seems quite clear that it is competent to prove the ordinary and customary way of doing an act as tending to show that the way in which it was actually done was or was not negligent.

It is also complained that the plaintiffs were allowed to prove that it was not customary to weigh pipe of this character in the oil fields in order to ascertain whether it was of the weight prescribed at the time it was sold. As we have before stated, the plaintiffs were under no obligation to inspect the tubing shipped to them. They could rely upon the implied warranty of conformity to description, and unless the defects which caused the injury were such as were plainly visible, or were known to them, they would not be

charged with notice thereof, or with the duty to inspect the material and ascertain whether or not such deficiency existed. This evidence did not appreciably tend to prove any material issue in the case, and if it were improperly admitted and there was prejudice by reason thereof it would be prejudice to the plaintiffs because if any inference could be drawn therefrom it would be that the plaintiffs were under a duty to inspect and weigh the material when such duty is not imposed upon them under the law.

Defendant also complains that it was not allowed to show that it was not its custom to warrant the material sold by it. This evidence was properly rejected by the court. If the controversy was whether or not there was an express warranty contended for on one side and denied on the other the custom of the defendant in that regard, if known to the plaintiffs, might be proven as a circumstance to corroborate their contention that such a warranty was not made, but it would have no pertinency in a case where an implied warranty is relied upon. In 35 Cyc. 391, it is stated: "Although it has been held in some cases that a warranty may be implied by custom, the decided weight of authority is to the effect that a warranty will not be implied by usage or custom when none is implied by the common law, nor can custom or usage be shown against a warranty implied by law. To permit this to be done, it has been said, would be extremely pernicious in its consequences and render vague and uncertain all the rules of law on the sale of chattels."

This text seems to be fully supported by the authorities. *Dickinson* v. *Gay,* 7 Allen 29; *Barnard* v. *Kellogg,* 10 Wall. 383; 29 Am. & Eng. Encyc. L. 385; *Chicago Packing &c. Co.* v. *Tilton,* 87 Ill. 547; *Whitmore* v. *South Boston Iron Co.,* 2 Allen 52; *Thompson* v. *Ashton,* 14 Johns. 316; *Wetherill* v. *Neilson,* 20 Pa. St. 448; *Jones* v. *Ellis,* 68 Vt. 644, 35 Atl. 488.

It is also claimed that it was error to refuse to allow a witness to testify to the contents of a card which it was claimed was posted in the defendant's store reciting that it would not be liable under any circumstances beyond the value of the goods sold. It was shown that the card had been

posted at one time, but could not be produced upon the trial of the case. The party who had been in charge of the store for sometime prior to the trial was not introduced, but another party was introduced who testified that he had made a search of the store and office in company with the then manager, and they were unable to find it, and defendant then offered to prove the contents of it by a witness, which offer was denied. It is not shown that the plaintiffs, or any of them, had knowledge that this card was posted, or of its contents. On the contrary they testified that they had no such knowledge. The evidence would not be proper unless it was shown that plaintiffs had knowledge of it and it may be doubted if defendant could limit its liability by posting a card in that way unless those dealing with it expressly assented to the terms thereof, or their dealings were under such circumstances as would lead to the conclusion that such condition was in contemplation of the parties when making the contract. Certainly under the showing made here it was not error for the court to reject this evidence.

A great many assignments of error are made to the action of the court in the admission and exclusion of evidence during the trial of the case. What we have said we believe covers the substantial points relied upon and will be sufficient to furnish a guide to the circuit court in another trial.

The judgment below will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*