SHAW *v.* MUSGROVE.

No. 8960.   October 13, 1932.

*R. Glenn Dickerson* and *Wilson, Bennett & Pedrick*, for plaintiff.
*Kelley & Dickerson* and *J. M. Towery*, for defendant.

Hill, J.   L. L. Shaw brought a petition for injunction and other relief against W. V. Musgrove, alleging in substance that petitioner on December 4, 1926, leased from the defendant the turpentine privileges to the trees on described lands, the lease to become operative from January 1, 1927; that the defendant was undertaking to revest the right to turpentine the trees on a part of the land, and was cupping the trees for that purpose, when petitioner had this right under the lease contract.   The prayers were that the defendant be enjoined from further cupping the trees on the property; and for general relief.   The portion of the lease contract pertinent to the issues in the case is as follows:   "Also, the said W. V. Musgrove does hereby lease unto the said L. L. Shaw, his heirs and assigns, for the term hereinafter stated, twenty crops of virgin faces, situated upon the following described lots of land [describing them]. It is distinctly agreed and understood that the said L. L. Shaw, heirs and assigns, shall have the right to cup twenty crops on the foregoing described lands, which lands belong to the said W. V. Musgrove in fee simple; that when the said L. L. Shaw has thus cupped twenty crops that no more timber is to be cupped.   It is further understood and agreed that said W. V. Musgrove guarantees that said timber will cup the said twenty crops.   The said twenty crops is to be cupped within four years from January 1, 1927, and the said L. L. Shaw shall have the right to work the same four years from the time of cupping, beginning with reference to each

tract or parcel of land as cupped; the intention of this lease and of this clause being that all of said twenty crops shall be fully and finally worked and the rights hereby conveyed shall terminate within eight years from January 1, 1927."

Petitioner alleges that he has already cupped and is working 154,-826 cups, leaving yet to be cupped by petitioner 45,174 cups to give petitioner his full complement of cups as provided in the lease contract; and that the remaining trees had not been cupped within four years from January 1, 1927; that the reason the balance of the trees have not been cupped is that for the past two or three years, owing to the financial depression existing generally throughout the United States, and particularly within the territory occupied by the naval stores industry, the prices for naval stores have fallen below the cost of production, and the operators have been advised by their factors to cut down the operation and reduce the output so as to preclude, if possible, the further decline in the prices of spirits and resin; that in the fall of 1930 the defendant and plaintiff were discussing the situation, and defendant inquired of plaintiff if he did not think the operators should not put up any virgin cups at all the succeeding season, stating that he was not going to do so himself, that he was going to keep his timber and work only old faces, that if the operators should continue to put up new cups the result would be the continuance of low prices, etc.; that plaintiff realized that the suggestion of defendant was wise and proper, and it was for this reason and otherwise that plaintiff did not enter upon the placing of the cups on the timber so as to complete his twenty crops; "that he believed that he was authorized under the lease to refrain from placing any cups on the trees in 1931, so as to complete the balance of the twenty crops," etc.

The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted.

The Civil Code (1910), § 4266, provides: "The cardinal rule of construction [of contracts] is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." In *Fay & Eagan Co.* v. *Dudley*, 129 Ga. 314, 317 (58 S. E. 826), the rule is declared to be that where a contract is in writing and there is no claim that the contract as it appears in the

writing was the result of any fraud, accident, or mistake, and is free from ambiguity, the parties must stand or fall by the terms of the instrument. The portion of the contract in the present case which is to be construed is clear and unambiguous, and there are no repugnant clauses. By the terms of the contract the plaintiff had the right to work any of the timber on any of the lands covered by the contract for four years from the time he commenced working the timber, provided that he should not in any event cup more than twenty crops, and "the said twenty crops is to be cupped within four years from January 1, 1927." It will be seen that the time for "cupping" the timber is expressly limited, and that the agreement limiting this period does not conflict with any other part of the contract. The agreement does not conflict with the stipulation that Shaw shall have the right to work the timber four years from the time of cupping the timber, beginning with each tract or parcel of land so cupped; and in the view we take of the contract it does not conflict with the provision that all of the "twenty crops" provided for in the contract shall be fully and finally worked and the rights conveyed should terminate within eight years from January 1, 1927. The contract in the present case did not convey title to the timber, but only the license to use it for the purposes stated. *Johnson* v. *Truitt,* 122 *Ga.* 327 (50 S. E. 135). Had there been no stipulation limiting the period for cupping in the instant case, the right to work the timber would have revested in the defendant unless the plaintiff had entered the lands and commenced working the timber within a reasonable time. *Goette* v. *Lane,* 111 *Ga.* 400 (36 S. E. 758) ; *Lott* v. *Denton,* 146 *Ga.* 363 (91 S. E. 112). Under the contract the time for commencing the work on the timber is limited, and "the said twenty crops is to be cupped within four years from January 1, 1927."

The decision in *Purdom Naval Stores Co.* v. *Knight,* 129 *Ga.* 590 (59 S. E. 433), is close in, under the facts, to the present case. That case involved the construction of a turpentine lease, and the facts were very similar to those of the case under review. In the *Purdom* case the lease provided that "the said timber is to be boxed during the season of 1905 or 1906, . . the said right for turpentine purposes is to run for a period of four years from the time each lot is boxed." Mr. Justice Atkinson, in delivering the opinion of the court, said: "Having provided that the boxing

should be done during either season, the defendant had all or any part of either season in which to box. After boxing the trees, it had ₍the right for the full term of four years thereafter to otherwise work for turpentine purposes the trees which were actually boxed during that season, but not any other trees. The intention is clear, from the mandatory language, 'the said timber is to be boxed during the season of 1905 or 1906,' that no boxing was to be done thereafter." But it is insisted that the *Purdom* case is not controlling, and that the expression "that no boxing was to be done thereafter" (1905, 1906) was entirely obiter; and further that there was no clause in the lease in the *Purdom* case which attempted to explain the intention of the parties, as in the present case, and therefore that the lease in the *Purdom* case was wholly unlike the lease in the instant case, and that in view of the difference, and in the light of the authorities cited by the plaintiff, the *Purdom* case is not controlling. We can not agree with learned counsel for plaintiff as to this; for we think that the principle ruled in the *Purdom* case is controlling and decisive of the present case.

The plaintiff insists on his allegation, admitted by the demurrer, that he believed that he was authorized under the lease to refrain from placing any cups on the trees in 1931, so as to complete the balance of the twenty crops (10,000 cups), etc. The allegation is insufficient as a basis to estop the defendant from asserting his rights to the land in controversy. The plaintiff does not allege any fraud, or deceit, or bad faith on the part of the defendant. The defendant only "inquired of plaintiff if he did not think the operators should not put up any virgin cups," etc. The allegation at most stated a conversation which was of a general nature; and even under the allegation the defendant did not tell the plaintiff that it would be a good idea for turpentine operators not to put up any virgin cups where their leases would run out if they did not do so. This was merely a general conversation in which the contract was not mentioned, and no written or oral agreement was entered into to change the terms of the lease contract. The able brief of counsel for the plaintiff, while stating correct abstract principles of law, does not convince us that the trial court erred in dismissing the action on general demurrer.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent.*