33658. INMAN *v.* LOVE.

DECIDED SEPTEMBER 12, 1951.

*Bennett, Pedrick & Bennett,* for plaintiff in error.

*Clarence D. Blount,* contra.

WORRILL, J. E. L. Love, doing business as the Love Orchard & Vineyard Development Company sued Hoke Inman for $240 plus interest and attorney's fees allegedly due him upon a contract of sale of 1200 grapevines which it was alleged the defendant refused to accept upon their delivery to him. The defendant answered admitting execution of the contract sued upon, but setting up as a defense to the action allegations touching upon fraud in the procurement of the contract. The plaintiff demurred generally and specially to the defendant's answer, particularly to paragraphs 12, 13, 14 and 15. The trial court sustained the demurrers as to these paragraphs, and ordered them stricken from the answer. The defendant excepted pendente lite. The defendant, alleging that his only material defenses had been withdrawn by the court's ruling moved for a continuance. This motion was denied, the case proceeded to trial, the plaintiff introducing evidence of the execution of the contract and that the sum sued for was due and unpaid. The defendant putting in no evidence, the trial court directed a verdict for the plaintiff. The defendant assigns error before this court upon the ruling on the demurrers to the answer and upon the final judgment for the plaintiff as being infected with and affected by the ruling on the demurrers to the answer.

The material part of the defendant's answer which was stricken on demurrer was as follows: "Further answering said complaint, the defendant alleges as follows: Defendant alleges that through fraud and misrepresentation the defendant was induced to sign a contract with the plaintiff with reference to the purchase of certain grapevines and defendant alleges that he would not have signed said contract except for the fraudulent contrivances and the cunning and deceitful conduct of the plaintiff who misrepresented material facts in securing the signature of the defendant, and that at the time defendant signed said contract he was ignorant of the fact that said statements were false and because of said fraud and such material false statements, the contract or paper signed by the defendant has been rescinded. The defendant alleges that the plaintiff made two materially false statements which induced him to sign said contract and said statements were false in the following particulars: The first false statement that the plaintiff made was that the First National Bank in Waycross through Mr. George M. Bazemore, the President thereof, was sponsoring the plaintiff's program as a new money crop which was to be developed in southeast Georgia and the plaintiff produced a list of well known and successful farmers and stated to the defendant that this list had been furnished to the plaintiff by Mr. George M. Bazemore with the recommendation that the farmers of Ware County purchase grapevines to become part of the program. Defendant says that this statement was material to his signing any contract and was part of the inducement of his signing said contract and that said statement was materially false in that no such list was furnished to the plaintiff by Mr. George M. Bazemore and it was well known to the plaintiff that Mr. George M. Bazemore has not furnished any such list, and such statement on the part of the plaintiff constituted fraud. The defendant shows that Mr. George M. Bazemore for many years has been the executive officer of the First National Bank in Waycross, which bank maintains a farm service department exclusively for farmers and caters to an agricultural program, said bank sponsoring corn club contests, conservation of land contests and especially the chief money crop of southeast Georgia, namely, tobacco growing. That the said George M. Bazemore was awarded what is known

as the Robert Strickland Agricultural Memorial Award in behalf of said bank for doing the most outstanding job for farmers in the State of Georgia for the year 1947. That in the years 1948 and 1949 said Mr. George M. Bazemore in behalf of the First National Bank in Waycross was chairman of the Agricultural Committee for the Georgia Bankers Association and has been generally recognized as a leader in planning and assisting farmers in agricultural programs and because of such record as stated above the recommendation of Mr. George M. Bazemore would carry unusual and almost instant approval of any plan for farmers which was offered. That the plaintiff was cunning and knew of the high standing of Mr. George M. Bazemore among the farmers of Ware County, Georgia, and fraudulently used his name and his recommendation to induce signing of said contract. Defendant says further the plaintiff stated that the First National Bank in Waycross would finance the purchase of said grapes and inasmuch as said bank has for years financed programs which it sponsored, the defendant was misled into signing said contract believing that convenient terms for payment would be worked out with the help of said bank and said statement was fraudulent, deceitful and false and was material to the signing of said contract by the defendant.

"13. Defendant shows that the plaintiff came to his house which is located many miles from the City of Waycross and the First National Bank in Waycross and defendant had no opportunity to discuss with Mr. George M. Bazemore the truthfulness of said two material misrepresentations referred to above, as plaintiff represented that he would only be in Ware County two or three days and the contract would have to be signed immediately and the defendant who was engaged in gathering his crops could not afford to leave his farm to further investigate said matter.

"14. Defendant shows that within a short time after he had signed said contract he did confer with Mr. George M. Bazemore and learned that plaintiff had not obtained the sponsorship of the First National Bank in Waycross and that a trick had been played upon him, and defendant learned that the plaintiff had cunningly made the same misrepresentations to a number of other farmers in Ware County, and that Mr. George M.

Bazemore on learning what had happened, attempted to locate the plaintiff, had dispatched the field agent for agricultural loans of said bank, Mr. Harley Tyre, to find the said E. L. Love and to warn him against the fraud and deceit which he was practicing and to stop him from selling grapevines to farmers in Ware County based upon the misrepresentations stated above, and the said Harley Tyre within a short time after the fraud was discovered, as reported by the defendant, found the said E. L. Love who was then in the company of Mr. Folks Bennett who had been employed as his agent in Ware County, Georgia, and warned Mr. E. L. Love to discontinue using the name of the bank aforesaid and stating that Mr. George M. Bazemore desired Mr. Love to come by the bank and see him which the said E. L. Love refused and continued in his fraudulent scheme of tricking the farmers of Ware County, Georgia.

"15. Defendant shows that he discovered through talking to other farmers in Ware County, and to Mr. George M. Bazemore at the First National Bank in Waycross that the same fraudulent scheme had been practiced on a number of other farmers as well as himself and that he consulted an attorney, Mr. E. Kontz Bennett, of Waycross, Georgia, and sent a telegram to the plaintiff notifying him that the contract was rescinded and that he would not accept the grapes, this notice being given promptly on discovery of the fraud and prior to the date of shipment."

A critical examination of the answer here shows that there is no material difference between this case and the case of *Love* v. *Nixon*, 82 *Ga. App.* 445 (supra), and we are constrained to hold that this case is controlled thereby. It would serve little purpose to repeat here the general rules with regard to the defense of fraud in the procurement in actions on written contracts, which rules were set forth with such clarity and perspicuity there. The whole gist of this case is simply that the answer here shows no excuse why the defendant did not or was not able to investigate the truthfulness of the plaintiff's representations before signing the contract. So far as appears from the petition and the answer the parties were utter strangers dealing at arm's length with each other. The fact that the plaintiff lived a considerable distance from Waycross, where it is conceded

he might have ascertained the truth or falsity of all of the plaintiff's representations, relied upon by him here, and the fact that the plaintiff told him that he was in a hurry and would be in the county only a day or two more, was not such an emergency as to justify the defendant in recklessly disregarding all the plain and simple rules of everyday caution before signing the contract.

Presumably the defendant can read. He who can read must do so or suffer the consequences from his negligent failure to do so. The contract sued on expressly provides that "No warranties, express or implied, representations, promises or statements have been made by the said First Party [the plaintiff] unless indorsed hereon in writing." There is, of course, no mention of the representations or statements, relied upon by the defendant, in the written contract. Such being the case, the trial court did not err in sustaining the special demurrers to paragraphs 12, 13, 14 and 15, and in striking these paragraphs from the answer, and the defendant having made no defense to the plaintiff's prima facie case, in thereafter directing the verdict for the plaintiff for the amount sued for.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*